No. 45,945

THE STATE OF KANSAS, *Appellee*, v. HAROLD MORRIS, *Appellant*.

(493 P. 2d 274)

Opinion filed January 22, 1972.

*Leonard D. Munker*, of Wichita, argued the cause and was on the brief for the appellant.

*David P. Calvert*, deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Keith Sanborn*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Appellant was convicted by a jury of first degree robbery and he appeals, alleging three trial errors all relating to the court's instructions to the jury. They will be discussed as presented in his statement of points.

"1. The Court failed to instruct the jury of a lesser included offense, namely, receiving stolen property."

The court's proposed instructions were discussed in chambers. Appellant's retained counsel, Mr. Tyler C. Lockett, suggested an instruction on receiving stolen property, but the trial court was dubious about its propriety. The prosecutor, Mr. David P. Calvert, would have been delighted to have the instruction as a place for the jury to compromise—a prior trial having ended in a hung jury—but thought the charge would be error. The discussion ended:

"THE COURT: I'm kind of afraid it might be error. But, would it be error if both of you requested it?

"MR. CALVERT: I have never run across that problem before.

"MR. LOCKETT: I think it is the duty of the State, if they think it is error, to object.

"MR. CALVERT: Yeah.

"MR. LOCKETT: I think there is something about ambushing the Court, isn't there? It is error, I'm sure, Your Honor. Receiving stolen property is a separate and distinct crime.

"THE COURT: I always thought it was.

"I believe I better overrule that objection Tye. I don't want to foul up the law in the state.

"What other objections?

"MR. LOCKETT: That is the only one we'd have, Your Honor."

All involved at the trial level thus agreed that the suggested instruction would have been improper. We also agree.

Although neither party cites a case dealing directly with the distinction between *robbery* and receiving stolen property, we have said several times that the latter offense is separate and distinct from, and not included in, the offense of *larceny*. It was recently restated in *State v. Omo*, 199 Kan. 167, 172, 428 P. 2d 768:

"Based upon the testimony of Tony Pinzino offered by defendant and already stated, defendant requested the trial court to submit an instruction to the jury that he might be found guilty of the offense of receiving stolen property. This request was refused. Defendant asserts the refusal as error, in effect arguing the offense of receiving stolen property is a lesser degree of the crime of larceny which was charged. Not so. The offenses of larceny of property and receiving stolen property are separate and distinct crimes (*State v. Fields*, 70 Kan. 391, 78 Pac. 833; *State v. Wasinger*, 133 Kan. 154, 298 Pac. 763). The trial court properly refused the request."

The same reasoning that led to this conclusion convinces us that receiving stolen property is not a lesser offense in a charge of robbery, and an instruction on it would therefore have been erroneous.

"2. The Court failed to properly instruct the jury on a question submitted to the Court after deliberation on the date of the preliminary hearing and the date the alibi was filed by the defendant."

The record shows the following proceedings after the jury had retired to deliberate:

"THE COURT: Let the record show the jury is in the box, defendant is in the courtroom, counsel are present.

"I have received two questions, written questions from Mr. Botteri, the foreman of the jury. No. 1: 'At what time following the robbery was the preliminary hearing held?' In response to that question, I'm going to have the reporter read back the testimony of Mr. Lon Stockton wherein that was brought out.

"On question No. 2, 'What date was the notice of alibi filed,' I can't give you the actual date because that is not in evidence. I can't give the jury any new evidence at this point. I have instructed the jury already, though, that an alibi is a proper defense and that I can simply tell you in answer to question No. 2 that the alibi was legally and properly filed.

"(Thereupon, the reporter read back a small portion of Mr. Stockton's testimony; . . ."

The court could, of course, have ascertained from the file the date that appellant's alibi notice was filed, and it appears that the testimony read to the jury relating to question number one was about a week in error. However, this court can perceive no way in which either date could have been material to the issue of guilt; we see no error in the trial court's response to the jury's questions, and certainly see no prejudice to the appellant.

"3. The Court failed to properly instruct the jury following the testimony of the State which was prejudicial, immaterial and irrelevant."

This claim is based on the testimony of one of the arresting officers. On direct examination he testified only that he conducted a line-up in which appellant was a participant. On cross-examination appellant went far beyond the scope of the direct by asking the officer about his interrogation of the appellant. After eliciting that appellant had been properly warned of his rights, counsel asked generally what the conversation between the two had been. This opened a whole new area of inquiry, and resulted in the following exchange on redirect:

"Q. Did you have any further conversation with him at that time?

"A. At what time?

"MR. LOCKETT: I'm going to object to that as being a shotgun question on redirect. If he wants to specifically go into it—it just opens up the door for anything.

"THE COURT: I kind of think maybe you're right. Sustained.

"Q. (By Mr. Calvert) Did you have any conversation with Mr. Morris about his philosophy?

"MR. LOCKETT: I'm going to object, Your Honor, that is not material."

"MR. CALVERT: Well, now, we're talking about this conversation, Your Honor.

"THE COURT: Yeah, I think it is material. Overruled. He may answer.

"A. Yes.

"Q. (By Mr. Calvert) What was that?

"A. He told us that he hated white people because we had suppressed his race for—

"MR. LOCKETT: I object to this, Your Honor. It is really not material and the only thing it is designed for is to inflame the jury. It has nothing to do with this case.

"MR. CALVERT: Let me ask a specific question.

"THE COURT: I think I'll strike that last statement from the record. But, go on. I don't want any inflammatory evidence. I'll strike that last one from the record. Go ahead.

"Q. (By Mr. Calvert) Did you have any conversation with him about his jobs?

"A. Yes, sir.

"Q. What was that?

"A. He told us that he didn't believe in working, that he was a hustler and that throughout his lifetime he had not worked more than a total of—

"MR. LOCKETT: I object to this, Your Honor. It has no materiality in this case.

"THE COURT: Overruled. Proceed.

"A. (Continuing) And that throughout his lifetime he had worked no more than a year and a half. He said that he was not a thief, but he would clip people. I asked him what he meant by clipping people and he said that if he was somewhere, such as a bar, and someone had a pocket full of money and they fell asleep around him, they were asking for their money to be taken and that he would do this.

"MR. CALVERT: No further questions."

This testimony, for our purposes, has two aspects. The injection of appellant's alleged racism was rejected by the court, and ordered stricken on the court's own initiative. We have no doubt that the court would have gone further and admonished the jury to disregard it had he been requested to do so at the time. Failure to make such a request may have been the result of counsel's decision to let well enough alone—further discussion might only have served to emphasize the objectionable testimony. The fact remains that no such request was made.

The second aspect of the testimony, relating to appellant's professed vocation of "clipping" people, may be justified as legitimate redirect examination. As noted above, the conversation was brought into the case for the first time by appellant. Under familiar rules, the opposing party is generally permitted to explore an entire transaction or conversation only partially explained. The common term for what appellant did is "opening the door." The scope of permissible examination under these circumstances is largely within the discretion of the trial court. See *Frame, Administrator v. Bauman,* 202 Kan. 461, Syl. ¶¶ 1 and 2, 449 P. 2d 525; *State v. Hubbard,* 126 Kan. 129, 266 Pac. 939, 58 A. L. R. 327.

But assuming this testimony was not admissible—and its connection with a first degree robbery charge is at best tenuous—appellant has not made any affirmative showing of prejudice resulting from this brief interlude in a trial requiring two full days of testimony. He does not show, for example, that it was emphasized or even mentioned by the state in its closing argument. In addition, the only error now claimed with respect to any of the testimony is the court's failure to admonish or instruct the jury, and no request that it do so was ever addressed to the trial court. As we have said,

this court "has long been committed to the rule a party is in no position to complain of the failure to give an unrequested instruction (*State v. Turner,* 114 Kan. 721, 723, 220 Pac. 254; *State v. Linville,* 150 Kan. 617, 621, 95 P. 2d 332; *State v. Gatewood,* 169 Kan. 679, 685, 221 P. 2d 392)." *State v. Graham,* 172 Kan. 627, 629, 242 P. 2d 1067.

No reversible error having been shown, the judgment is affirmed.

APPROVED BY THE COURT.