No. 46,982

STATE OF KANSAS, *Appellee*, v. ELVINA STOKES, *Appellant*.

(523 P. 2d 364)

Opinion filed June 15, 1974.

*Chester I. Lewis,* of Lewis and Davis, of Wichita, argued the cause and was on the brief for the appellant.

*Larry D. Kirby,* deputy district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of Wichita, were on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This case stems from a domestic tragedy which opened with the marriage of the principal characters in 1969 and

continued through three tumultuous years. The final scene was played out on a street corner in Wichita on the evening of May 17, 1972, where the defendant, Elvina Stokes, before an audience of numerous witnesses, shot her husband David three times. One bullet struck his heart, thus bringing down the final curtain on the marriage.

The epilogue has consisted of two murder trials. The first resulted in a hung jury, the second in a conviction of first degree murder and this appeal.

The state's theory throughout has been that on the fatal day Elvina, tired of receiving David's abuse, took a pistol and sought him out with a view to putting a final end to her torment at his hands. She, on the other hand, claimed self defense. She described a quarrel earlier that day which had terminated in a shot being fired in her direction by David. When they had a chance encounter at the fatal intersection she was frightened, she said, and when he got out of his car and approached her she shot in his direction to frighten him.

For reversal she relies on two alleged trial errors. The first is a ruling by the trial court which allowed the prosecution to cross-examine her about an incident of some seven years before, in which she had allegedly stabbed a young woman who was then competing with her for the attentions of a young man. The ruling was made at an *in camera* conference before the state's cross-examination of the defendant commenced. The court found that defense counsel had placed in issue the reputation and character of the defendant, "that is, that trait of character for being peaceful and law-abiding." The court noted that it had "heard elicited evidence admissible solely for that purpose only, that is, tending to show that she is peaceable and law-abiding, from her mouth."

When pressed by defense counsel as to whether the ruling was based solely on the defendant's testimony that "she has been a hard working person all her life," the court responded, "Well, I wouldn't say that's all, but other testimony together with your opening statement. I really didn't think there was any question but this was what you intended to do it for."

Appellant's claim of error is based on that part of K. S. A. 60-447 which says that in a criminal case the prosecution may introduce evidence of the accused's bad character "only after the accused has introduced evidence of his good character." The proscription

applies to cross-examination of the accused as well as to direct evidence. *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705, Syl. ¶ 5. She argues that her own testimony, telling the jury merely where she had lived and worked over the years, did not amount to evidence of her "good character" under the statute, and did not put her character in issue.

If this were all, we would be inclined to agree. Character is not put in issue by the kind of background testimony elicited from nearly every witness as to address, occupation, place of employment, marital status, etc. Such testimony serves more to identify the witness rather than show good character. Where the witness is the accused such biographical data will naturally be somewhat more extensive than in the case of the ordinary witness, but that fact alone does not put the accused's character in issue. Cf. *City of Topeka v. Harvey*, 188 Kan. 841, 365 P. 2d 1109, where the testimony of the defendant's wife as to the length of their marriage and size of their family was held not to put the defendant's character in issue. In the same vein, see also *Martin v. People*, 114 Colo. 120, 162 P. 2d 597; *United States v. Masino*, 275 F. 2d 129 (2d Cir., 1959); and *United States v. Tomaiolo*, 249 F. 2d 683 (2d Cir., 1957), all holding that a defendant may testify, among other things, to his service in the armed forces and the receipt of an honorable discharge without putting his character in issue. Those cases also indicate that such data as place of birth, education, and length of residence in the community are in the same category.

We think such a rule is sound. The purpose of the statute, in combination with K. S. A. 60-421, is to permit a defendant to testify in his own behalf without having his history of past misconduct paraded before the jury. *State v. Gunzelman*, supra; *State v. Roth*, 200 Kan. 677, 438, P. 2d 58. He is entitled, like any other witness, to let the jury know who he is so that it may properly fit him into the pattern of events brought out at the trial. Of course, when the testimony of either the defendant or any other witness for the defense goes beyond those bounds and attempts to characterize the defendant's past life as blemish-free, or makes reference to specific prior incidents, he foregoes to that extent the protection of the statute.

That, in substance, is what happened here. The trial court's ruling was not based solely on the testimony of the defendant, but on "other testimony" as well. During the cross-examination of a prosecution witness, a Wichita police detective, defense counsel

asked if the witness had run a "records check" on the defendant. Receiving an affirmative reply, he asked if the record disclosed any prior arrests or convictions; the detective reported an arrest for assault with a deadly weapon. This arrest was for the knifing incident about which the prosecution later asked the defendant. After satisfying himself that the record in the detective's hands showed only a bond forfeiture and not a conviction, counsel let the matter drop.

The cross-examination of the detective was wholly unrelated to his direct testimony, and it could well be argued that it had only one purpose—to show the defendant's good past record. (We were told on oral argument that at the first trial the same inquiry revealed no previous arrests, and the incident was uncovered in the interim.) If that was its purpose and effect, the defendant's character *was* in issue and could have been attacked by the prosecution through any proper means. Whether the means employed here were proper or not is another issue.

We are not called upon to decide that issue, however, because the prosecution's questioning which is complained of went only to the single incident which the defense had itself brought to light. It was thus not an attack on the defendant's character as such, even though it may have had some incidental effect along those lines. Even if the defense strategy with the detective was not an attempt to introduce evidence of the defendant's good character, it interjected into the case an incident from her past which it then left dangling. The door had been opened by the defense, the prosecution was free to enter and explore. Cf. *State v. Morris*, 208 Kan. 464, 493 P. 2d 274; *State v. Pappan*, 206 Kan. 195, 477 P. 2d 989; and cases cited therein. And compare, *Dewey v. Funk*, 211 Kan. 54, 505 P. 2d 722.

The second claim of error involves the instruction given by the court on the issue of self defense. The defendant requested that the instruction be in the words of the statute, K. S. A. 1973 Supp. 21-3211:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force."

Instead, the court gave the following:

"A person is justified in the use of force to defend himself or herself against

an aggressor's imminent use of unlawful force to the extent it appears reasonable to him or her under the circumstances then existing.

"In this connection the use of deadly force in self defense may only be used where it reasonably appears to the person under the circumstances then existing that such force is necessary to prevent death or serious injury to themselves."

The thrust of defendant's objection is directed at the second paragraph of the instruction given, which amplifies and explains the statutory limitation on one's right to use *deadly* force to repel an attack. She would have preferred a bare bones instruction, without the fleshing-out chosen by the court.

We see no merit in the contention. We recently considered our present statute on self defense, and compared it with its predecessor, in *State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099. We there said (p. 192):

"Both statutory enactments embody the generally recognized concept that a person may lawfully use such force as may reasonably seem necessary to him or her in defending one's self against unlawful attack and serious bodily harm, *but may not go further than appears reasonably necessary for such purpose.* (40 Am. Jur. 2d, Homicide, § 139, pp. 429, 430.)" (Emphasis added.)

We thus recognized that 21-3211 is a codification of the common law right of self defense, and there approved somewhat lengthy instructions on the subject, saying (p. 194):

". . . In our opinion, the instructions cover very adequately—and perhaps in much more detail than required—the essential elements of the age-old doctrine of self defense; the right of a person attacked to defend himself against serious personal harm and to use such force, *but no greater*, as reasonably appears to him to be necessary for that purpose, and in so acting the person attacked is justified." (Emphasis added.)

Likewise here, the instruction given was not in the exact language of the statute, but there was no requirement that it be so. It correctly stated the law of self defense, and that is what *was* required.

The judgment is affirmed.

APPROVED BY THE COURT.