No. 47,797

STATE OF KANSAS, *Appellee*, v. WILLIAM GREGORY, *Appellant*.

(542 P. 2d 1051)

Opinion filed November 8, 1975.

*Morris D. Hildreth*, of Becker, Hildreth, Eastman and Gossard, of Coffeyville, argued the cause and was on the brief for the appellant.

*David L. Thompson*, county attorney, argued the cause, and *Curt T. Schneider*, attorney general, *Richard A. Medley*, former county attorney, and *Linda Sue Trigg*, were with him on the brief for the apppellee.

The opinion of the court was delivered by

FOTH, C.: On Christmas Eve, 1973, William Gregory shot Peter Troy Fullard in the stomach outside the LKC Tavern in Coffeyville. When Fullard died of the wound some thirty days later Gregory was charged with second degree murder. He was convicted by a jury of involuntary manslaughter, and he appeals. His claims of error go to the court's instructions to the jury and to the admission of certain rebuttal testimony.

The LKC Tavern was operated by the defendant's half brother, Kenneth Cargyle. Fullard, the deceased, spent the afternoon in the tavern fortifying himself for the holiday. Trouble developed between him and Cargyle, involving an alleged display of a knife by Fullard, and culminating in his ejection by Cargyle at the point of a sawed-off shotgun. One source of the quarrel was Fullard's claim that he was shortchanged on a ten dollar bill. Gregory, who had been a bystander up to this point, took Fullard's change outside and gave it to Fullard's son. Soon afterwards Fullard called to Gregory to go outside again. Those inside the tavern soon heard a shot and when they went to the door found Gregory on the steps pistol in hand. Fullard was on the ground some ten to twenty feet away.

Gregory's story then and at trial was one of self-defense. According to him, Fullard came at him with an open knife, threatening to kill him. He had, he said, a mighty fear of knives as a result of being stabbed in an affray in Texas some years earlier; all he could see was "that blade shining." He retreated to the tavern door, found he couldn't open it, pulled his pistol and shot once, "trying to stop him." There were no other witnesses to the shooting, although the occupants of the tavern came pouring out promptly after the shot. Fullard's pocket knife, some 4 to 4¼ inches long, was found on the ground ten to fifteen feet from the steps where Gregory had been standing. It was closed.

At trial Gregory objected to an instruction on involuntary manslaughter because he claimed the evidence would not support it. Here he renews the point, but broadens his objection to contend

also that involuntary manslaughter is not a lesser offense included in second degree murder. In addition, he now claims the instruction given was inadequate and erroneous.

His argument that manslaughter is not a lesser offense included in murder is based on our statement in *State v. Carpenter*, 215 Kan. 573, 527 P. 2d 1333, Syl. ¶ 3:

"A lesser offense is to be considered a lesser included offense when all elements necessary to prove the lesser offense must be present and be required to establish the elements of the greater offense."

He points out that involuntary manslaughter as defined in K. S. A. 21-3404 contains elements which are not necessary to prove a charge of second degree murder.

Granting that this much of his argument is correct, it does not lead to the conclusion he asserts. Whether a defendant may be convicted of an included crime is governed by K. S. A. 21-3107 (2):

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following: (*a*) A lesser degree of the same crime; (*b*) An attempt to commit the crime charged; (*c*) An attempt to commit a lesser degree of the crime charged; or (*d*) A crime necessarily proved if the crime charged were proved."

The *Carpenter* definition relied on by defendant was obviously tailored to clause (*d*) of the statute, dealing with a lesser crime "necessarily proved if the crime charged were proved." The clause we deem pertinent here is (*a*), covering a "lesser degree of the same crime."

While it may at first blush appear that manslaughter is a different crime from murder, rather than a lesser degree of the same crime, we think on closer examination this is not so. The generic crime we are dealing with is "homicide." Under our former crimes act this court was required on occasion to define the terms "murder" and "manslaughter," since the statutes did not do so. In *State v. Ireland*, 72 Kan. 265, 83 Pac. 1036, it was recognized that the source to be looked to for such definitions was the common law. The court was guided in its search by what it referred to as "the celebrated case" of *Commonwealth v. Webster.*, 59 Mass. 295, 52 Am. Dec. 711. Chief Justice Shaw of the Massachusetts Supreme Judicial Court there prefaced an exhaustive discussion of the common law rules of murder and manslaughter by saying:

". . . Homicide, of which murder is the highest and most criminal species, is of various degrees, according to circumstances. The term, in its

largest sense, is generic, embracing every mode by which the life of one man is taken by the act of another." (P. 303.)

The search for definition by this court was continued in *State v. Jensen*, 197 Kan. 427, 417 P. 2d 273. There, after an extensive review of the authorities, the court observed:

"As indicated, murder at the common law and manslaughter differ not in kind or nature of the offense but only in the degree." (P. 435.)

This basic principle is also recognized by the text writers:

"While, in one sense, murder and manslaughter are separate crimes, yet, in a broader sense, they involve but one crime and are only degrees of felonious homicide." (Warren on Homicide, § 83, pp. 415-16.)

See also, 40 Am. Jur. 2d, *Homicide*, § 42; 40 C. J. S., *Homicide*, § 39.

We hold that manslaughter is a lesser degree of homicide than murder, and for the purposes of K. S. A. 21-3107 (2) (a) is a "lesser degree of the same crime." Therefore, in a murder prosecution, an instruction on manslaughter is not only proper but required if justified by the evidence.

Whether a manslaughter instruction is justified by the evidence is an entirely different question. We have many times held that an instruction on an included offense is not proper if from the evidence the jury could not reasonably convict of the lesser offense. (*E. g.*, *State v. McDermott*, 202 Kan. 399, 449 P. 2d 545; *State v. Diggs*, 194 Kan. 812, 402 P. 2d 300.) We must therefore examine the elements of involuntary manslaughter as set out in K. S. A. 21-3404:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety."

Paraphrasing the statute, it requires (1) an unintentional killing without malice; *and* (2) that it occur while the defendant was *either* (a) committing some misdemeanor *or* (b) performing some lawful (*i. e.*, not criminal) act in a manner which, in turn, was either (*i*) unlawful or (*ii*) wanton.

Defendant's primary argument on the evidence goes to element (1) requiring that the killing be done unintentionally. He relies on a stipulation in the record that "No evidence was introduced tending to show the fact that the *shooting* was done unintentionally in the commission of an unlawful act not amounting to a felony."

(Emphasis added.) We have held, however, that whether the *shooting* is intentional or not is immaterial; what controls under the statute is whether the *killing* is intentional. *State v. Childers,* 217 Kan. 410, 416, 536 P. 2d 1349; *State v. Weyer,* 210 Kan. 721, 504 P. 2d 178. Here there is no question but that Gregory intentionally shot Fullard, but the jury might well have believed he did not intend to kill him but only, in his words, "to stop him." It was Gregory who first suggested calling the police and an ambulance, further negating an intent to kill.

More difficult is element (2), describing the quality of the defendant's acts at the time of the unintentional killing. The state tried the case and the court instructed the jury under what we are here referring to as (2) (a), a misdemeanor-manslaughter theory. The instruction given was as follows:

"1. That the defendant, William Gregory, unintentionally killed Peter Troy Fullard.

"2. That it was done while in the commission of the unlawful act of shooting a firearm within the City of Coffeyville, Kansas, under circumstances that evidenced a realization of the imminence of danger to the person of another coupled with a reckless disregard for the probable consequences of such conduct.

"3. That such act occurred on or about the 24th day of December, 1973, in Montgomery County, Kansas, and that Peter Troy Fullard subsequently died on January 25, 1974, as a result of said act, and within one year of December 23, 1973."

It may be seen that in paragraph 2 the instruction assumes the existence of the "unlawful act of shooting a firearm within the City of Coffeyville," without giving the jury an opportunity to determine whether the act was unlawful. The terms of the ordinance do not appear in the record, and they were not set out in the instructions to the jury. Insofar as the record shows, and judging from what the jury was told, *any* discharge of a firearm is a violation of the ordinance, even if done in self-defense. The jury might improperly infer from this that the mere act of firing, regardless of justification, supplied the "unlawful act" element of involuntary manslaughter.

Further, the balance of paragraph 2 of the instruction would also require the jury to find that the unlawful act was committed in a wanton manner. (The language is evidently taken from the definition of "wanton conduct" found in K. S. A. 21-3201 [3].) This dual requirement is erroneous: an "unlawful act" need not be wanton. It is only a "lawful" act which must be committed in a wanton

(or unlawful) manner. Hence, even if a misdemeanor-manslaughter theory were proper here the instruction on the one hand takes too much away from the jury on the misdemeanor issue, and on the other gives it an unnecessary element to find in the way of wantonness.

Our difficulty with the entire misdemeanor-manslaughter theory is that the gun was concededly fired with intent to injure a human being. Absent some justification such as self-defense, the act was at least aggravated battery under K. S. A. 21-3414, a class C felony. The involuntary manslaughter statute requires that the unlawful act be one "not amounting to felony." Even though some ordinance may have been violated we find the undisputed facts present an insuperable barrier to finding that the shooting, if by itself a criminal act, did not amount to a felony.

We are far more comfortable with making our analysis under what we are designating (2) (b), requiring a "lawful" act done in either an unlawful manner or wantonly. All parties, including this court, agree that there was no element of wantonness involved, so our attention is focussed on determining whether the jury could have found that Gregory was engaging in a lawful act, but did so in an unlawful manner.

K. S. A. 21-3211 provides:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force."

Thus if the jury found that Gregory was in fact being attacked, it would necessarily find that he was entitled to defend himself. In doing so he was engaged in a "lawful act."

But the statute and our cases recognize that in repelling an attack one is limited to "that force which *reasonably appears to be necessary* for that purpose." (*State v. Stokes*, 215 Kan. 5, 523 P. 2d 364, Syl. ¶ 4. See also, *State v. Blocker*, 211 Kan. 185, 192, 505 P. 2d 1099.) If the jury had found the deadly force employed by Gregory was "reasonably necessary" to repel Fullard's attack, it would have acquitted him. But if it found that force was excessive what could its verdict be? If it found no malice, it could not convict of murder. If it credited Gregory's testimony that he did not intend to kill, it could not convict of voluntary manslaughter. Yet the use of excessive force eliminated the statutory justification for the homicide and made it unlawful. Still, it did not in itself constitute the misdemeanor "unlawful act" under the involuntary manslaughter stat-

ute because by definition that would have to be an act "prohibited" by statute or ordinance. There is, however, another solution to the jury's dilemma. We think the jury could conclude on the facts of this case that Gregory had a right of self-defense, and his exercise of that right was a lawful act. It could also find, however, that shooting Fullard was not reasonably necessary—after all, his knife was not open when found. This use of excessive force could be found to be an "unlawful manner" of committing the lawful act of self-defense, and thus supply that requisite element of involuntary manslaughter.

We are reaching the same result under similar analysis in *State v. Clark*, 218 Kan. 18, 542 P. 2d 291. There the defendant found himself staring into the muzzle of a gun held by his wife. According to his testimony he promptly seized a gun of his own, panicked, and things went blank. The wife died of three bullet wounds. We are holding in that case that an instruction on involuntary manslaughter should have been given because:

".  .  . It is apparent that reasonable minds might differ as to the point when conduct necessary to repel an aggressor ceases. From the evidence in this case it could be determined that defendant was justified in drawing and pointing the gun in self-defense, thus creating the lawful act required by the statute. It could also be determined that if the gun was discharged in the manner described by defendant, its discharge could be the result of unlawful or wanton conduct as required by the statute." (P. 23.)

In both *State v. Childers*, supra, and *State v. Weyer*, supra, this court assumed without discussion that involuntary manslaughter was a lesser crime included in murder. In *Childers* the jury could have found that firing a shot in "warning" the deceased was a wanton act. In *Weyer*, firing the fatal shot could have been either wanton conduct or an effort at self-defense. While not directly in point, both lend some support to the conclusion we reach here.

There is in the record a stipulation of non-evidence to the effect that "[n]o evidence was introduced tending to show the fact that the shooting occurred in the commission of a lawful act in an unlawful or wanton manner." This stipulation, if one of fact, flies squarely in the face of the evidence in the record recited above, viewed as we view it. The stipulation really is more of a legal conclusion, reflecting the parties' views as to what the evidence shows. If the evidence is before us, whether it supports any particular conclusion is a question of law. (Cf., *e. g.*, *Streff v. Goodyear Tire &*

*Rubber Co.,* 211 Kan. 898, 508 P. 2d 495, Syl. ¶ 2.) The stipulation reached was without the benefit of our views in this case and in *State v. Clark,* supra. As a stipulation of law, we cannot consider it as binding on this court. *Urban Renewal Agency v. Reed,* 211 Kan. 705, 508 P. 2d 1227, Syl. ¶ 4; *In re Estate of Maguire,* 204 Kan. 686, 466 P. 2d 358, Syl. ¶ 5; *Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957, Syl. ¶ 10.

The result on this issue is that it was proper to instruct the jury on involuntary manslaughter, but the instruction given was erroneous and embodied an erroneous theory. The defendant is therefore entitled to the new trial he requested under proper instructions.

What has been said requires reversal, but since we are remanding the case for a new trial defendant's second claim of error deserves consideration. After Gregory took the stand on his own behalf and told his version of the homicide the state countered with the rebuttal testimony of one Mamie Lee Broadway. She testified, over the defendant's continuing objection: that she had been Gregory's "girl friend" for about a year and a half; that she knew he was married; that on one occasion he threatened her with a gun when she changed the lock on her door; that on another occasion he threatened her with a gun in an argument over another man; and finally, that she had had sexual relations with him. Although it does not appear in the record counsel informed us on oral argument that at the time of her testimony Miss Broadway was some 8½ months pregnant.

The defendant moved to strike Miss Broadway's testimony as improper rebuttal, and renews his objection here. We think it is well taken.

The state seeks to justify this evidence by claiming that Gregory put his character in issue by testifying that he was a church member and a special deputy sheriff. The proposition is doubtful. See, *State v. Stokes,* supra. But even assuming his character was in issue, Miss Broadway's testimony as to specific instances of alleged misconduct was precluded by K. S. A. 60-447, which says that if a character trait is relevant "evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible." See *State v. Mason,* 208 Kan. 39, 41, 490 P. 2d 418. Judge Gard's commentary is to the same effect: "The effect of the general rule is to make opinion testimony and testimony of reputation available as proof of character which is circumstantially relevant, but to reject evidence of specific in-

stances of conduct except evidence of convictions for crime." (Gard, *Kansas Code of Civil Procedure*, p. 438.) Neither was the testimony admissible under K. S. A. 60-422 for the purpose of impeaching Gregory's credibility. *State v. Humphrey*, 217 Kan. 352, 363-4, 537 P. 2d 155.

An instruction was given limiting the jury's consideration of this testimony to the issue of "intent, knowledge, or absence of mistake" under K. S. A. 60-455. The state tells us the instruction was an afterthought, requested by it out of an abundance of caution "[s]ince part of Miss Broadway's testimony concerned certain actions on the part of the defendant which could be considered crimes or attempted crimes it was important that the jury not be allowed to assume that these actions indicated a predisposition to commit the crime alleged in the information." Yet that is exactly the purpose for which the state introduced the evidence. Its position throughout the proceedings has been that this testimony was necessary to refute Gregory's claim to be a man of good character. The evidence was designed to show that his character as a peaceful citizen was bad, *i. e.*, that he was just the type who was likely to commit an unprovoked assault. The instruction could not cure the error in admitting the evidence.

As a final attempt of justification, on oral argument the state asserted that Miss Broadway's testimony was offered to rebut the defendant's professed fear of knives. We find it difficult to see how his sex life or even his quarrels with his paramour had anything to do with whether he had a fear of knives. We can only see how it would have the inevitable effect of putting him in an unfavorable light before the jury on the basis of conduct wholly irrelevant to the issues being tried. We therefore hold that the admission of Miss Broadway's testimony was prejudicial error.

Inasmuch as the defendant stands acquitted of any higher degree of homicide, a new trial can only be on involuntary manslaughter. K. S. A. 21-3108 (5). The judgment of conviction is reversed and the case is remanded for a new trial in accordance with the views expressed herein.

APPROVED BY THE COURT.

MILLER, J., not participating.