(624 P.2d 476)

No. 51,952

State of Kansas, *Plaintiff-Appellee,* v. Betty A. Warren, *Defendant-Appellant.*

Petition for review denied April 29, 1981.

Opinion filed March 6, 1981.

*Russell Shultz,* of Shultz, Fisher, Monnat & Shultz, of Wichita, for the appellant.

*Roger C. Skinner,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before Foth, C.J., Rees and Parks, JJ.

Foth, C.J.: Defendant Betty Warren appeals from her conviction of involuntary manslaughter. Our primary concern is with the instructions given on that offense.

The case arose from a shooting which occurred at a Wichita tavern known as Judy's Joint at approximately 11:00 p.m. on June 25, 1977. The deceased, one James Rouse, had gone to the tavern at approximately 9:00 in the evening accompanied by his brother George, Lawrence "Butch" DeShazer, and one "Indian Bill." After the group arrived at the tavern they began playing pool and drinking beer.

In the course of these activities the group encountered defendant and a group of her friends, who were also drinking. Both groups were in various states of intoxication. Although the details vary, it was generally agreed that James and defendant ended up in an argument filled with profanity. From that point on two separate stories emerge.

According to Butch DeShazer, he was outside when Indian Bill told him of the argument between James and the defendant. He returned to the bar, stepped between the two, and pushed James out of the door. He and James were walking together along the side of the building toward their car when Butch heard someone shout, "She's got a gun." When he and James turned around, Butch saw the defendant raise a gun from her side, point it, and fire two shots from a distance of approximately sixteen feet. Simultaneously, James dove toward a pickup truck and Butch dropped down beside the wall of the tavern. After the shots were fired James ran across the street where he died. George, James' brother, grabbed the defendant and Butch ran toward her and tore the gun from her hand. George thereupon began hitting and kicking the defendant.

Helen McElrath, Butch's sister and James' former wife, largely corroborated Butch. According to Helen, after Butch pushed James out of the door the defendant followed them out, and Helen followed the defendant. Outside, Helen screamed, "She's got a gun," heard shots, saw James fold over and run across the street, and saw George begin hitting the defendant.

The defendant, on the other hand, told a story of self-defense. When, in the course of the argument, James began to swear at her, she went outside to her pickup truck, got her gun, and placed it in her boot. When she returned, James invited her outside. She followed, expecting merely to continue the argument. As she walked around the corner of the building, he hit her twice, knocking her to the ground. As she was lying on her back, she saw a foot or pistol coming at her so she reached to her boot and got her gun. She did not specifically remember pulling the trigger but she heard two shots.

There was undisputed evidence that she had been beaten, but whether before the shooting by James, or after the shooting by George, depended on which version of the incident was accepted. The pathologist's testimony indicated a bullet entering James' right front breast and exiting the left back some five inches below

the entry. This evidence was consistent with either Butch's description of James diving for cover, or defendant's version of James leaning over her.

This was defendant's second trial. She was first tried for second-degree murder and convicted of voluntary manslaughter. In an unpublished opinion this Court reversed for failure to instruct on self-defense. *State v. Warren,* No. 49,581, February 2, 1979. Although her testimony at that trial was not as supportive of self-defense as her current version, this Court nevertheless found enough evidence to require submission of that issue to the jury. The Court went on to say:

"The instruction on involuntary manslaughter contained only the proposition that the acts in question were done while in the commission of an unlawful act. Defendant maintains that it was error not to further instruct that involuntary manslaughter is also an 'unintentional killing while in the commission of a lawful act in a wanton or unlawful manner.'

"As defendant was entitled to an instruction on self-defense, it follows that she was also entitled to this instruction. Though firing a gun within the city limits is ordinarily an unlawful act, it may be lawful if done in self-defense. *State v. Gregory,* 218 Kan. 180, 542 P.2d 1051 (1975). See also *State v. Farley,* 225 Kan. 127, 587 P.2d 337 (1978)."

These comments were inspired by the fact that at the first trial the involuntary manslaughter instruction required the jury to find only an unintentional killing and "That it was done while in the commission of an unlawful act not amounting to a felony, to wit: discharging a gun within the city limits."

The defendant argued at that time, in substance, that self-defense would justify the violation of the city ordinance against shooting firearms, but that if her self-defense involved excessive force she might be guilty of involuntary manslaughter because the lawful act would thus become unlawful. In her brief she put it this way:

"That instruction allowed the Jury to determine the defendant was guilty of Involuntary Manslaughter if the acts in question were done while in the commission of an unlawful act, but no portion of the instruction allowed the Jury to consider that she was doing *a lawful act in an unlawful manner.* The very crime of Involuntary Manslaughter specifically includes an unintentional killing while in the commission of a lawful act in a wanton or unlawful manner." Appellant's Brief, p. 11, *State v. Warren,* No. 49,581 (emphasis added).

This court, agreeing that self-defense was an issue, also agreed that involuntary manslaughter by committing a lawful act in an *unlawful* manner was also an issue. When the case was retried

this concept was lost in the shuffle and the only instruction given on involuntary manslaughter dealt with commission of a lawful act in a *wanton* manner. The instruction given at the present trial, over defendant's objection, was:

"No. 6.
"The offense of Voluntary Manslaughter with which the defendant is charged includes the lesser offense of Involuntary Manslaughter. If you find the defendant is not guilty of Voluntary Manslaughter, then you shall consider if she is guilty of Involuntary Manslaughter.
"To establish this charge, each of the following claims must be proved:
"1. That the defendant unintentionally killed James A. Rouse;
"2. That it was done while in the commission of a lawful act, to-wit: self defense, in a wanton manner;
"3. That this act occurred on or about the 25th day of June, 1977, in Sedgwick County, Kansas."

Although in giving these instructions the trial court was attempting to comply with this court's views as expressed in the first *Warren* case, it unfortunately failed to achieve that goal.

Involuntary manslaughter is defined in K.S.A. 21-3404:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or by an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety."

In *State v. Gregory,* 218 Kan. 180, 183, 542 P.2d 1051 (1975), the court analyzed the elements of the statute, noting that it requires:

"(1) an unintentional killing without malice; *and*
(2) that it occur while the defendant was *either* (*a*) committing some misdemeanor *or* (*b*) performing some lawful (*i.e.,* not criminal) act in a manner which, in turn, was either
(*i*) unlawful or
(*ii*) wanton."

*Gregory* established two things with respect to a fatal shooting in claimed self-defense. First, violation of a gun ordinance would normally not meet the misdemeanor element of involuntary manslaughter because if justified by self-defense it would not be unlawful, while if not so justified, as an intentional infliction of harm, it would amount to a felony. Second, "[t]he use of excessive force may be found to be an 'unlawful manner' of commit-

ting the 'lawful act' of self-defense, and thereby supply an element of involuntary manslaughter." 218 Kan. 180, Syl. ¶ 5. This is alternative (*i*) of element (2)(*b*) in the analysis quoted above. It is founded on the idea that under K.S.A. 21-3211 only that force which reasonably appears to be necessary may be used in self-defense. See *State v. Stokes,* 215 Kan. 5, 523 P.2d 364 (1974); *State v. Clark,* 218 Kan. 18, 542 P.2d 291 (1975), *cert. denied* 426 U.S. 939 (1976); *State v. Cates,* 223 Kan. 724, 576 P.2d 657 (1978).

The court's instruction, however, permitted a conviction if defendant warded off an attack in a wanton manner. "Wanton" was defined in the next instruction, No. 7:

"K.S.A. 21-3201(3) provides that wanton conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of such conduct."

While the definition is proper, it describes a state of mind totally inconsistent with the concept of self-defense. One fending off an attack does not have a "reckless disregard" or an "indifference and unconcern" over consequences to the attacker—the victim *intends* to inflict injury on the attacker, and is legally justified in harboring that intent. Where self-defense is found to exist, the only element which would render the victim's conduct criminal is the use of excessive force, not the victim's state of mind.

Wantonness under the involuntary manslaughter statute *does* come into play where self-defense is claimed but is rejected by the jury. That was the situation in. *State v. Childers,* 217 Kan. 410, 536 P.2d 1349 (1975), and *State v. Weyer,* 210 Kan. 721, 504 P.2d 178 (1972), both discussed in *Gregory,* 218 Kan. at 186. In *State v. Farley,* 225 Kan. 127, 587 P.2d 337 (1978), cited in the first appeal in this case, an instruction was given on the use of excessive force in self-defense, but no instruction was given on wantonness if self-defense was not present. The omission of the alternative was held to be error.

There were, then, two theories upon which defendant could have been guilty of involuntary manslaughter. She could have been acting in self-defense but used excessive force, or she could have been acting *not* in self-defense, but in a wanton manner. Both theories should have been submitted to the jury. She could

*not* have been acting in self-defense *and* in a wanton manner, which was the only theory which was submitted.

Defendant also contends the trial court should have sustained her various motions for acquittal because her conduct was self-defense as a matter of law. The argument is without merit. By her own testimony, having armed herself during an argument defendant accepted an invitation to "go outside." If the State's version were accepted, she shot without provocation and could easily have been convicted of voluntary manslaughter. Or, if found to be too intoxicated to form an intent to kill, she could have been convicted of involuntary manslaughter under either of the theories outlined above, depending on whose version the jury chose to believe.

Reversed and remanded for a new trial on involuntary manslaughter.