(635 P.2d 1274)

No. 52,902

STATE OF KANSAS, *Appellee*, v. THURMAN J. WILLIAMS, *Appellant.*

Opinion filed November 13, 1981.

*Jay H. Vader,* of Jenkins, Way, Turner & Vader, Chartered, of Kansas City, for the appellant.

*John J. McNally,* chief deputy district attorney, *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: This is an appeal in a criminal action from a jury verdict finding Thurman J. Williams (defendant-appellant) guilty of involuntary manslaughter (K.S.A. 1980 Supp. 21-3404).

The facts surrounding this homicide are sketchy inasmuch as neither the defendant nor Mary Lou Ruffin, the only other witness to the event, took the stand. Defendant, shortly after the event, however, did make a statement to the police, which was admitted into evidence.

Apparently, on January 29, 1980, Williams was visiting his aunt, Mary Lou Ruffin, when an altercation erupted involving the two of them and the victim James Cunningham who was Ruffin's common-law husband. According to Williams' statement, he felt either his life or his aunt's life was in danger. Williams said Cunningham argued with the aunt, shoved her aside, and came at him with a kitchen paring knife. At that point, Williams, who was lying on a bed in the living room, shot Cunningham with a sawed-off shotgun which was lying at the foot of the bed. The pathologist's testimony offered at trial indicated Cunningham's blood alcohol content was .24, well within the range of intoxication.

Although Williams was originally charged with second degree murder (K.S.A. 21-3402), that charge was amended to voluntary manslaughter (K.S.A. 21-3403) prior to trial. In a trial to a jury, the State called five police officers associated with the case, as well as the pathologist who performed the autopsy on Cunningham's body; the defense called no witnesses. State's witness Young testified there were blood spatters "within" the deceased's hand which held the knife. From this testimony, the prosecutor argued to the jury that the deceased was unarmed at the time he was shot and that the paring knife had been placed in his hand afterwards. The jury returned a verdict finding Williams guilty of the included offense, involuntary manslaughter. Defendant moved for acquittal or, in the alternative, for a new trial. Both motions were denied.

Defendant filed a timely appeal, asserting the trial court erred in (1) instructing the jury on the "lesser included" offense of involuntary manslaughter, (2) giving an erroneous involuntary manslaughter instruction, (3) overruling defendant's motion for acquittal, (4) not giving the requested instruction on circumstantial evidence, (5) admitting gruesome photographs, (6) refusing the defense request that the words "beyond a reasonable doubt" be added to Instruction No. 9, and (7) not granting a mistrial when the jury sent down a note stating that they could not reach a unanimous verdict.

Defendant advances two theories under which he contends the trial court erred in instructing the jury on the offense of involuntary manslaughter. The first is that involuntary manslaughter is not a "lesser included" offense of voluntary manslaughter inas-

much as the former requires proof of elements not present in the latter. Defendant's statement of the test for determining whether any particular offense is a "lesser included" offense of another is correct. *State v. Gregg,* 226 Kan. 481, 482, 602 P.2d 85 (1979); *State v. Arnold,* 223 Kan. 715, 717, 576 P.2d 651 (1978). Applying this test to the offense of involuntary manslaughter, as compared with the offense of voluntary manslaughter, we concur with defendant that the former is not a "lesser included" offense of the latter. Thus, involuntary manslaughter is not an "included crime" under K.S.A. 21-3107(2)(*d*). This determination does not, however, conclude the inquiry. In *State v. Gregory,* 218 Kan. 180, 182, 542 P.2d 1051 (1975) it was held that involuntary manslaughter was an "included crime" of murder and thus properly submitted to the jury under K.S.A. 21-3107(2)(*a*) as "[a] lesser degree of the same crime." In reaching this result, the court found that the reference in K.S.A. 21-3107(2)(*a*) to "the same crime" was to the generic crime of *homicide.* Accordingly, we hold that involuntary manslaughter, although not a "lesser included" offense of voluntary manslaughter, is nonetheless an "included crime" as a *lesser degree of the same crime.* In a case such as the one before us, where, as we shall shortly demonstrate, the evidence could well justify a conviction of the offense of involuntary manslaughter, it was not error to instruct on this included offense and, indeed, such was the absolute duty of the trial judge under K.S.A. 21-3107(3).

Defendant's second theory is that the trial judge committed error in giving the instruction on involuntary manslaughter because there was no evidence before the jury of an unintentional killing. Defendant's argument is essentially that he was guilty of voluntary manslaughter or not guilty of any crime.

K.S.A. 21-3107(3) provides:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to."

Kansas appellate courts have often stated that instructions on lesser included crimes are *required* only when there is evidence that could support a conviction of the lesser crime. *State v. Prince,* 227 Kan. 137, 140, 605 P.2d 563 (1980); *State v. Gander,*

220 Kan. 88, 89, 551 P.2d 797 (1976); *State v. Ponds and Garrett,* 218 Kan. 416, 421, 543 P.2d 967 (1975). In the typical case, the defendant invariably complains that an instruction on a lesser included offense was *not* given. In this instance, defendant claims prejudice because the instruction *was* given when, he claims, there was no evidence the killing was unintentional.

We view the evidence differently. Defendant admitted the killing, but contended he did it in self-defense. The only eyewitness evidence, defendant's statement, contained no indication as to whether defendant intended the deceased's death as a result of the shot fired from the sawed-off shotgun. On this state of the record, a jury might well have inferred an intent to kill from the use of the weapon chosen alone. It chose not to do so. Likewise, if the jury believed the prosecution argument that the deceased was unarmed when he was shot, or armed only with a tiny paring knife, the jury might well have inferred that although injury was intended, the killing was unintentional and that the shooting was a lawful act (self-defense) committed in an unlawful manner (with excessive force). Further, the jury could have inferred the killing, although unintentional, was the result of wanton conduct in conjunction with a misdemeanor (assault and battery), if it believed there was an affray but did not believe the defendant acted in self-defense. Such permissible factual inferences are clearly and solely the province of the jury. *State v. Seelke,* 221 Kan. 672, 680, 561 P.2d 869 (1977), teaches that under such circumstances the trial judge would have committed reversible error had he not given the involuntary manslaughter instruction. We find no error in giving the instruction under the facts of this case.

Defendant next contends that, even if the trial judge was correct in instructing on involuntary manslaughter, he gave an erroneous instruction.

Instruction No. 12 was given on involuntary manslaughter and reads:

"If you find the defendant is not guilty of voluntary manslaughter, then you shall consider if he is guilty of involuntary manslaughter.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant unintentionally killed James Cunningham;

"2. *That it was done while in the commission of a lawful act in a wanton manner in that the defendant claims that he was acting in self-defense which is a lawful act, if it was done with a lawful intent.*

"3. That this act occurred on or about the 29th day of January, 1980, in Wyandotte County, Kansas.

"As used in this instruction the word wanton means conduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of the conduct." Emphasis added.

Defendant contends the italicized portion confused the jury. To substantiate that contention, he points to a question the jury had during deliberations about the difference between involuntary manslaughter and not guilty. Whatever the potential for confusion in the phrasing, we find the instruction does not correctly state the law regarding involuntary manslaughter.

Involuntary manslaughter is defined in K.S.A. 1980 Supp. 21-3404:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety."

The court in *State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975), paraphrased the statute to illustrate the interrelationship of the elements. The statute requires "(1) an unintentional killing without malice; *and* (2) that it occur while the defendant was *either* (*a*) committing some misdemeanor [now 'wanton commission'] *or* (*b*) performing some lawful (*i.e.,* not criminal) act in a manner which, in turn, was either (*i*) unlawful or (*ii*) wanton." 218 Kan. at 183 (emphasis in original).

The instant action falls under alternative (2) (*b*), and the recent case of *State v. Warren,* 5 Kan. App. 2d 754, 624 P.2d 476, *rev. denied* 229 Kan. 671 (1981), supports defendant's contention that the instruction in question was erroneous. In that case, a similar instruction was given which would have allowed the jury to find defendant had committed the lawful act of self-defense in a wanton manner. The court in *Warren* found wantonness "totally inconsistent with the concept of self-defense. One fending off an attack does not have a 'reckless disregard' or an 'indifference and unconcern' over consequences to the attacker—the victim *intends* to inflict injury on the attacker, and is legally justified in harboring that intent." 5 Kan. App. 2d at 758. (Emphasis in original.)

One can, however, as we have previously observed, use excessive force and render the lawful act of self-defense unlawful.

The *Warren* court distinguished "wanton" and "unlawful" when it explained that one can be guilty of involuntary manslaughter under such circumstances as we have before us by either acting in self-defense, but with excessive force, or by *not* acting in self-defense and in a wanton manner.

In the instant action, the court erroneously linked self-defense with wantonness and failed to instruct the jury that they could find defendant performed the lawful act of self-defense in an unlawful manner. Accordingly, this conviction must be reversed for a new trial on involuntary manslaughter.

Defendant also contends the trial court erred in overruling defendant's motions for acquittal at the close of the State's case and at the close of all the evidence. In *State v. Gustin,* 212 Kan. 475, Syl. ¶ 2, 510 P.2d 1290 (1973), this court stated a judgment of acquittal should be entered if the evidence is insufficient to sustain a conviction.

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." 212 Kan. at Syl. ¶ 3. Followed in *State v. Taylor,* 225 Kan. 788, 792, 594 P.2d 211 (1979) and *State v. Sanders,* 225 Kan. 147, 151, 587 P.2d 893 (1978).

The jury had before it defendant's statement in which he admitted the shooting and from which they could have found wanton conduct connected with a misdemeanor (disbelieving the self-defense contention) or excessive force used in self-defense, either of which would have supported a conviction of involuntary manslaughter. Arguably, the jury could also have found the killing intentional, which would have supported a conviction of voluntary manslaughter. On this state of the record, it was not error to overrule defendant's motion.

Even though we find the conviction must be reversed, it is worthwhile to consider other of defendant's contentions which are likely to recur on retrial.

We find no merit in defendant's contention a separate instruction on circumstantial evidence should have been given. PIK

Crim. 52.16 (1980 Supp.) recommends no separate instruction be given as to circumstantial evidence. The Comment cites *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728 (1974), in which the supreme court held an instruction on circumstantial evidence is "unnecessary when a proper instruction on 'reasonable doubt' is given." 215 Kan. at 156. PIK Crim. 52.02 was given verbatim in Instruction No. 9; we find such to be a proper instruction.

Defendant next contends error in admission of two gruesome photographs; the trial judge sustained the objection as to a third photograph. The color photographs admitted show, respectively, a close-up of the victim's chest with a hole in the upper portion and the interior of the apartment before the body was removed. The photographs were used as aids to the testimony of the police officers and pathologist in showing the relationship of the victim to the room and the point of entry of the shot.

While this court does not countenance the wholesale admission of gruesome photographs which add nothing to the State's case, *State v. Clark,* 218 Kan. 18, Syl. ¶ 2, 542 P.2d 291 (1975), gruesome photographs may be admitted when they show the nature and extent of wounds and other physical aspects of the crime. *State v. Villa & Villa,* 221 Kan. 653, 654-55, 561 P.2d 428 (1977); *State v. Jones,* 218 Kan. 720, 724, 545 P.2d 323 (1976); *State v. Randol,* 212 Kan. 461, 466-67, 513 P.2d 248 (1973).

The photographs in question are not gruesome other than in the fact they depict a dead body. There is very little blood and no disfigurement. Furthermore, resort to models or diagrams would have resulted in a cumbersome and less effective visual aid. The probative value of the photographs clearly outweighed any prejudice which flowed from their use. The court committed no error in admitting the photographs.

Finally, defendant contends the trial court erred in refusing to add the words "beyond a reasonable doubt" to Instruction No. 9 which was a verbatim restatement of PIK Crim. 52.02. We find no merit in this contention. The instruction has been approved on a number of occasions. See cases cited in *State v. Curtis,* 217 Kan. 717, 724, 538 P.2d 1383 (1975). The court did not err in giving the instruction as set out in PIK Crim. 52.02.

In light of our decision to reverse and remand this case, we find it unnecessary to address defendant's contention that a mistrial should have been granted.

The judgment of the trial court is reversed and the case is remanded for a new trial on the remaining charge of involuntary manslaughter.