No. 66,814

STATE OF KANSAS, *Appellee,* v. ANDREW PEREZ, JR., *Appellant.*

(840 P.2d 1118)

Opinion filed October 30, 1992. 

*J. Patrick Lawless, Jr.*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, assistant appellate defender, was with him on the brief for appellant.

*Julie McKenna*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

Six, J.: This is a criminal jury instruction case.

Defendant Andrew Perez, Jr., was convicted of the first-degree murder of his wife, Delores. K.S.A. 1991 Supp. 21-3401. Perez was sentenced, after a separate proceeding, to life imprisonment for 40 years without parole eligibility (commonly referred to as the "hard 40" under K.S.A. 1991 Supp. 21-4624 and K.S.A. 1991 Supp. 21-4628).

The instruction issue arises from Perez's assertions that the trial court erred in:

(1) failing to instruct the jury on the lesser included offense of involuntary manslaughter (Perez advanced the theory of self-defense);

(2) not instructing the jury on the defense of diminished capacity; and

(3) failing to inform the jury at the sentencing proceeding that if Perez was sentenced to life imprisonment with parole eligibility in 15 years there was no guarantee he would be paroled in 15 years.

Our jurisdiction is under K.S.A. 1991 Supp. 22-3601(b)(1) (an appeal from a conviction of a class A felony).

We find no error and affirm.

We apply the "clearly erroneous" standard of review to the failure to instruct on involuntary manslaughter and diminished capacity. Perez made no request to the trial court for either instruction. See K.S.A. 22-3414(3). Our review of the asserted error in failing to instruct on involuntary manslaughter also requires us to review the record for evidence in support of the self-defense theory. We approve the questioned "hard 40" instruction and, consequently, need not determine whether the standard of review is other than abuse of discretion.

## Facts
### The Defendant's Story

In August 1990, Perez informed a Salina police detective that he had killed his wife. Perez explained that his wife had filed for divorce approximately two weeks earlier and that they had argued the night before he stabbed her.

Perez stated that he wanted to reconcile, but Delores told him to leave her apartment. He refused and she threatened to call the police. They continued to argue while standing in the doorway between the kitchen and bedroom. Delores became angrier, grabbed a knife from the knife rack, raised the knife over her head, and stated, "Don't make me use this." Perez took the knife from her, "mentally snapped," and stabbed her.

While being questioned by the detective, Perez at first did not remember the number or location of the stab wounds. A moment later he said that he remembered stabbing her first on the right side of her head, breaking the knife tip. He recalled stabbing her between the eyes, with the knife penetrating her skull.

Perez stated that after Delores died, he washed the blood off the knife, and replaced it in the rack. He then held Delores for approximately 30 minutes before leaving the apartment. He walked back to the motel where he worked, changed his clothes, and washed the clothes he had been wearing.

Perez stated he tried to kill himself three different ways after returning to the motel. He displayed a cut on the palm of one hand and abrasions on his upper left rib cage. Perez begged the interviewing officer numerous times to kill him.

Following the interview, Perez gave a written statement which was admitted into evidence as a State's exhibit. (The statement is not in the record.)

### Additional Evidence—The State's Case

The autopsy physician removed the knife tip from Delores' skull. Delores had sustained at least 43 separate stab wounds to the face and scalp and several wounds to the chest area. Most of the wounds were deep, penetrating the scalp, chest, chest cavity, and breasts. One wound along the right eye penetrated the skull and cut the undersurface of the left side of the brain. The physician described wounds on the palm of Delores' left

hand, a deep cut on her left forearm, and cuts and scratches on her right forearm as defense wounds occurring in rapid succession over a short period of time.

Delores' body was found on the bedroom floor. Blood was pooled and splattered throughout the room. The bed sheets and pillowcases were stained with blood. Three bloodstained items— ladies panties, a washcloth, and a towel—were in the bathroom.

A forensic examiner with the Kansas Bureau of Investigation examined the crime scene, including the knives from the knife rack. The examiner found human blood on two knives. The blood was consistent with the blood identified from Delores' blouse. According to the examiner, the blood was not from Perez.

A bloodstain pattern analysis indicated there were three points at which Delores' body made contact with the bedroom floor. No marks or stains were found in the kitchen doorway.

Delores' brother testified that Delores was living with Perez in a mobile home in Salina when she filed for divorce. According to Delores' brother, he and their father helped move Delores into an apartment. Delores had obtained a restraining order against Perez. The brother stated that Delores spoke of the reasons that led to filing for divorce, e.g., Perez had a habit of lying, he cheated on her, and he stole money from her purse. Delores told her brother that Perez said that if she filed for divorce, he would kill her. Delores' father testified that during the move from the mobile home to her new apartment, Delores said that Perez had stated he would kill her if she divorced him.

## The Defense

Perez relied on an insanity defense. Robert Schulman, Ph.D., a clinical psychologist, examined Perez in September 1990. Dr. Schulman arrived at a diagnosis less serious than the one he testified to at trial.

Dr. Schulman testified that at the time of the initial diagnosis, he had not seen a 1987 Kansas State Reception and Diagnostic Center (KRDC) report on Perez. He stated that if he had seen the 1987 report, he probably would have included a more serious diagnosis in his initial report. Dr. Schulman's opinion was that Perez "suffered a schizophrenic illness, continued to suffer schizophrenic illness at the time of the alleged behavior, [and] to a

high degree of psychological certainty, was suffering from a psychotic break associated with schizophrenic illness." According to Dr. Schulman, Perez was in some kind of "psychotic frenzy" at the time of the offense. Dr. Schulman then stated: "Individuals who are experiencing those kinds of acute psychotic breakdowns give consideration to what is right or wrong."

Perez also called Robert Barnett, Ph.D., a clinical psychologist who was employed at the KRDC in 1987. Dr. Barnett examined Perez after Perez' 1987 conviction of indecent liberties with a child.

Dr. Barnett conducted various psychological tests. Dr. Barnett reported that persons who score the way Perez did are likely to have behaviors inconsistent with their general values followed by periods of guilt, remorse, and regret. In Dr. Barnett's clinical judgment, Perez understands societal values and would pay allegiance to them. Perez showed signs of suffering from schizoid mentation (a personality disorder where one passively avoids the company of others, *i.e.*, tends to be an extreme loner). Perez also showed an elevation indicating unusual thinking and bizarre ideation, a generic psychological term which includes magical, delusional, and obsessive compulsive thinking.

Dr. Barnett did not question that Perez could differentiate between right and wrong. The KRDC team, at the time of the 1987 evaluation, presumed that Perez was not suffering from any psychiatric disorder.

### The State's Rebuttal

In rebuttal, the State called Robert Huerter, a psychologist at Larned State Security Hospital (Larned), and Anthony Troiano, M.D., a Larned staff psychiatrist and unit chief. Perez was admitted to Larned for the purpose of determining whether he was legally sane at the time of Delores' death. Perez remained at Larned more than one month. Huerter saw him daily.

Huerter administered various psychological tests, interviewed Perez several times, and reviewed both KRDC and police records and Dr. Schulman's report.

Huerter concluded that Perez was legally sane at the time of the crime under the *M'Naghten* rule, *i.e.*, Perez was able to distinguish between right and wrong. Huerter diagnosed Perez

as having a "personality disorder, not otherwise specified; antisocial and borderline alcohol abuse, psychoactive substance abuse, not otherwise specified; and adjustment disorder with mixed emotional features." Perez's psychological diagnosis played a part in Huerter's conclusion of legal sanity. In addition, Perez was able to provide consistent descriptions of his actions on August 4, 1990 (the date of Delores' death). Huerter found no signs of schizophrenia or of a psychotic break.

Dr. Troiano also considered background history and interviewed Perez. Dr. Troiano found no evidence of: (1) manifest thought disorder; (2) psychosis; (3) psychotic type behaviors; (4) delusions or hallucinations; or (5) loss of reality contact. He did find evidence of characterlogical deficits. Dr. Troiano testified that Perez showed no clinical history or evidence that he had any psychotic breaks. According to Dr. Troiano, Perez was neither functioning under a delusional process nor felt so overwhelmed for his own safety that he was compelled to kill his wife.

### The Sentencing Hearing

Following the verdict of first-degree murder, a separate sentencing proceeding was held to determine if Perez should receive a "hard 40" sentence (life with a mandatory term of 40 years) under K.S.A. 1991 Supp. 21-4624 and K.S.A. 1991 Supp. 21-4628. The State contended that the aggravating circumstances justifying the 40-year term were the heinous, atrocious, and cruel manner in which the crime was committed. The jury found aggravating circumstances "as evidenced by the number of wounds, the force of the attack, and the prolonged pain and suffering of the victim" outweighed any mitigating circumstances. The jury recommended a sentence of life imprisonment with parole eligibility after 40 years. The trial court accepted the jury's sentence recommendation.

### Self-Defense—The Lesser Included
### Offense of Involuntary Manslaughter

Perez first contends that the trial court erred by not instructing the jury on the lesser included offense of involuntary manslaughter. Perez neither requested the instruction nor objected to the trial court's failure to so instruct. (The trial court instructed the jury on first-degree murder, second-degree murder, and volun-

tary manslaughter.) Perez argues that there was sufficient evidence from which the jury could have concluded that he unintentionally killed his wife while defending himself, using excessive force.

The State counters that an instruction on involuntary manslaughter was not required because the evidence did not support a theory of self-defense. Specifically, the State argues that Perez's statement indicates Delores raised the knife above her head and said, "Don't make me use this." Delores made no other threat and did not swing the knife or otherwise attempt to harm Perez. The State asserts that once Perez removed the knife from Delores she was unarmed and that Perez was not justified in using the knife to defend himself. We agree.

In a criminal case a trial court must instruct the jury on the law applicable to the theories of all parties where there is supporting evidence. K.S.A. 21-3107(3); *State v. Wilburn,* 249 Kan. 678, Syl. ¶ 1, 822 P.2d 609 (1991). An instruction on a lesser included offense is not proper if from the evidence the jury could not reasonably convict the defendant of the lesser offense. In reviewing the evidence to determine if a lesser included offense instruction should have been given, we must review the evidence in the light most favorable to Perez. *State v. Perkins,* 248 Kan. 760, 772-73, 811 P.2d 1142 (1991).

The right of self-defense is defined by K.S.A. 21-3211, which provides:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of lawful force."

We have explained that

" '[u]nder the common law, the excuse for killing in self-defense is founded upon necessity, be it real or apparent.' *State v. Stewart,* 243 Kan. 639, 644, 763 P.2d 572 (1988).

'Our test for self-defense is a two-pronged one. We first use a subjective standard to determine whether the defendant sincerely and honestly believed it necessary to kill in order to defend. We then use an objective standard to determine whether defendant's belief was reasonable—specifically, whether a reasonable person in defendant's circumstances would have perceived self-defense as necessary.' 243 Kan. at 649.

When we speak of 'necessary,' we mean to prevent imminent serious bodily harm." *State v. Jordan,* 250 Kan. 180, 185, 825 P.2d 157 (1992).

Perez relies on *State v. Hill,* 242 Kan. 68, 744 P.2d 1228 (1987), and *State v. Gregory,* 218 Kan. 180, 542 P.2d 1051 (1975). However, *Gregory* and *Hill* are distinguishable. Hill and Gregory each testified that they were in fear of assault by the victim. *Hill,* 242 Kan. at 73; *Gregory,* 218 Kan. at 181. In each case, the evidence supported the existence of a reasonably necessary belief under the circumstances.

During oral argument, Perez' counsel referenced *State v. Clark,* 218 Kan. 18, 542 P.2d 291 (1975), which was not cited in his brief. In *Clark,* we reversed a conviction of voluntary manslaughter because the trial court failed to give an instruction on involuntary manslaughter as a lesser included offense of the charge of second-degree murder. Clark was convicted of the Christmas season killing of his wife during a domestic argument. Clark had testified he was startled when he turned and saw that his wife was pointing a gun at him. He "panicked," dropped to the floor, reached under the bed for a gun, and heard an explosion. Clark had no recollection of pulling the trigger. He then looked over at his wife, who was lying on the floor. 218 Kan. at 20. We reasoned that a jury "might possibly" have inferred from Clark's testimony that he did not intend to kill his wife. 218 Kan. at 22.

Perez presented no evidence that he had a belief the use of force was necessary. He did not indicate that he was frightened or believed that Delores would use the knife. The inflicting of the stab wounds on Delores by Perez using two knives marks a telling factual distinction between the case at bar and *Clark,* and shows that any notion that self-defense was necessary was unreasonable.

Perez argues that he did not intend to kill Delores. He attempts to negate intent by asserting he: (1) "snapped"; (2) showed remorse over the killing; (3) claimed to have attempted suicide; (4) asked police to kill him; and (5) was in a psychotic frenzy and suffered paranoia.

His attempts to negate intent are not successful. The evidence of at least 43 stab wounds precludes a finding of unintentional killing without malice.

The jury could not reasonably conclude that Perez was guilty of involuntary manslaughter. An instruction on involuntary manslaughter was not required.

### Diminished Capacity

Perez contends that if the jury had been instructed on diminished capacity, it could have found that he lacked the specific intent to kill Delores, a necessary element of first-degree murder.

The State asserts that Perez neither requested a diminished capacity instruction nor raised the issue below; therefore, he may not claim error on appeal. The State's assertion is correct.

Absent an instruction request, we may reverse only if the trial court's failure to instruct was clearly erroneous. The failure to instruct is clearly erroneous only if we reach a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *Perkins*, 248 Kan. 760, Syl. ¶ 8. See K.S.A. 22-3414(3).

The State also contends that because we have held that the giving of a diminished capacity instruction is a matter of judicial discretion, Perez's argument is without merit. We agree.

We have recently reviewed the issue of a trial court's refusal to give a requested instruction on diminished capacity. In *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991), we acknowledged that evidence of diminished capacity is admissible for the limited purpose of negating specific intent. We concluded that even if evidence of diminished capacity is presented, the instruction is not required. Instructing on diminished capacity is a matter of trial court discretion.

We find no error in the trial court's refusal to instruct on diminished capacity.

### The "Hard 40" Instructions, K.S.A. 1991 Supp. 21-4624(4)

Perez challenges a portion of the "hard 40" sentencing instructions. The challenged instruction stated:

"If the jury finds beyond a reasonable doubt that aggravating circumstances exist that are not outweighed by mitigating circumstances that are found to exist, then the jury may consider recommending the mandatory minimum term of 40 years. If the jury makes such a recommendation it must designate upon its verdict form with particularity the aggravating circumstances which it found to exist beyond a reasonable doubt.

"If the jury has a reasonable doubt that aggravating circumstances found to exist outweigh mitigating circumstances found to exist, then it is your duty to return a verdict of life imprisonment with parole eligibility in 15 years."

Perez asserts the instruction indicated he would be paroled after serving 15 years. He contends the instruction should have explained that parole eligibility does not mean definite release in 15 years. Perez argues the jury could have concluded he would be released automatically after 15 years if it did not impose a mandatory 40-year term. He requests that his sentence be vacated and remanded for modification.

The State contends: (1) Perez failed to object to the "hard 40" instruction; consequently, our review is limited to the clearly erroneous standard; and (2) the "hard 40" instruction correctly stated Perez would be *eligible* for parole in 15 years; therefore, the instruction was not error.

At the sentencing instruction conference, the trial court asked for objections. Defense counsel commented:

"The only thing else that I may be concerned about is, I know it's emphasized in the jury instructions that parole eligibility exists after a certain length of time. I think it's important if that language goes in there that— that the jury be advised that it is only parole eligibility and it's not an assurance that anybody would be, in fact, placed upon parole after 40 years or 15 years."

The trial court responded: "The Court will permit argument on that."

In closing argument, defense counsel stated: "There is no suggestion in the instructions that people are automatically paroled out in 15 years or even after 40 years. The length of the time that he will spend beyond those periods is up to people other than this Court."

We find no error in the instruction and, consequently, need not address whether defense counsel's remarks during the instruction conference were sufficient to challenge the instruction.

We approve the challenged portion of the "hard 40" instructions. If the jury chose not to recommend the 40-year mandatory sentence under K.S.A. 1991 Supp. 24-4628, the only alternative was life imprisonment under K.S.A. 21-4501. K.S.A. 1991 Supp. 22-3717(b) provides that an inmate sentenced to life for a class

A felony shall be eligible for parole after serving 15 years. The instruction was stated in terms of parole eligibility. Defense counsel argued to the jury that inmates are not automatically paroled after 15 years. Thus, the instruction fairly stated the law, and the jury could not have been misled.

The Pattern Instructions in Kansas Committee has adopted an instruction for the mandatory 40-year imprisonment provision of K.S.A. 1991 Supp. 21-4624 and K.S.A. 1991 Supp. 21-4628. The instruction, PIK Crim. 2d 56.01-F (1992 Supp.), is nearly identical to the instruction we have approved in the case at bar.

Affirmed.