THE STATE OF KANSAS v. BOB HATCH.
No. 10637.

1. HOMICIDE—*proof of application for peace warrant not essential to defense of justifiable.* In a prosecution for murder where the homicide was admitted, and the defendant relied only upon the justification of self-defense for acquittal, it was error for the Court to instruct the jury in substance that the right of self-defense does not arise when there is opportunity to restrain the deceased by process of law, and that if, having opportunity, the defendant failed to invoke the authority of the law by going before a magistrate with a view of having the deceased bound over to keep the peace, then he was not entitled to the plea of self-defense.

2. —————— *doctrine of "retreat to the wall" not law in this State.* A person who is unlawfully attacked by another may stand his ground and use such force as at the time reasonably appears to him to be necessary to protect himself. Where the defendant is in the wrong, however, and commences the affray, even without an intent to kill or inflict great bodily harm, and the other person being thus provoked makes a deadly assault, then it is the duty of the defendant to retreat as far as the fierceness of the assault will permit him to do without danger of great personal injury to himself before slaying his antagonist.

*Appeal from Reno District Court.*
*Hon. F. L. Martin, Judge.*

REVERSED AND REMANDED.     OPINION FILED NOVEMBER 7, 1896.

THE defendant was charged with murder in the first degree by shooting and killing Thomas Mullen on December 5, 1895, at Hutchinson, in Reno county. He was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for the term of 20 years; and he appeals to this court because of alleged errors upon the trial. It was not denied that Hatch shot and killed Mullen at the time and place stated, and the defendant relied only upon the justification of self-defense for acquittal. The evidence tended to show the following facts among others,

namely : —That Hatch was a colored hotel porter, part of whose business it was to go to the depots on the arrival of passenger trains to solicit people to go to the hotel for which he was employed ; that on the afternoon of December 5, he went into a billiard hall where Mullen and Freeman, two colored men, were engaged in playing pool, and some bantering words passed between Hatch and Mullen about playing a game when Mullen threatened to strike Hatch with the butt end of a billiard cue, but Freeman interfered ; that Hatch then went outside, Mullen following him, and there they had hot words and Mullen threatened to kill Hatch ; that Freeman also became involved in the quarrel, at which Mullen took offense against him ; that soon afterward Mullen obtained a shotgun and carried it about the street threatening to kill Hatch and Freeman ; that they were advised thereof and they requested the chief of police and a constable to disarm Mullen ; that Hatch then endeavored to procure a pistol and made some threats against Mullen ; that friends of Mullen after a time prevailed upon him to give up his gun ; that about 6 o'clock in the evening Hatch borrowed a pistol from his employer on the statement that he needed it for defense against Mullen, who had threatened his life, and it was necessary for him to go to meet an incoming train ; that he went to meet the train, and at the corner of Second and Main streets he called "Hello, Tom ! " meaning, as he says, Tom Fife, not seeing Mullen ; but this is a fact in dispute ; that Mullen came toward him and there were some words of attempted explanation, and Mullen ordered Hatch to take his hands out of his overcoat pockets, as if in fear that Hatch was armed ; that Hatch did as requested, but Mullen approaching nearer, and the talk between

them continuing, thereupon Hatch drew the pistol from his overcoat pocket and began firing at Mullen, who started across the street; that Hatch fired four or five shots, three of them taking effect and one proving fatal, Mullen falling and expiring in the street immediately. Mullen was not armed at the time, but Hatch testified that, before he shot, Mullen was approaching toward and threatening to kill him, and that he made a motion as if reaching for a pistol. Mullen had been under the influence of intoxicating liquors during the afternoon. The defendant complains especially of the following instructions which were given by the Court to the jury :

"24. The right of self-defense does not arise where there is opportunity to restrain the assailant by process of law ; and if the jury in this case believe from the evidence, beyond a reasonable doubt, that the defendant had an opportunity to invoke the interposition of the law against any threatened assault by the deceased; and failed to invoke the authority of the law, he is not entitled to the plea of self-defense ; and it would not be enough for the defendant to call upon the police officers and constables for protection, unless the deceased was present at the time, attempting then and there to assault him. But if he had ample opportunity to do so, the law devolved upon him the duty of going before some magistrate and have the deceased bound over to keep the peace, or committed to jail in default of bail ; and if, having such opportunity, he failed to do so, and deliberately and premeditatedly armed himself with a deadly weapon and went forth to meet the deceased in a conflict which he expected, or provoked a conflict by inviting the deceased into a dispute or altercation with him, he is not entitled to the plea of self-defense.

"25. I instruct you further in the same connection, that in order to establish justifiable homicide in self-defense, it must appear that the party killing had retreated as far as the fierceness of the assault would

permit him to do without great personal injury to himself; and if, in this case, the defendant expected an attack to be made by the deceased, and if you believe from the evidence beyond a reasonable doubt that the defendant had practicable opportunity to retreat and thus avoid killing the assailant, before he was in imminent danger of great personal injury, he is not entitled to the plea of self-defense.''

Questions were raised as to some other instructions and also as to the competency of evidence.

*McKinstry & Fairchild*, for appellant.

*F. B. Dawes*, Attorney General, and *Lucius M. Fall*, County Attorney, for The State.

MARTIN, C. J.   I. The homicide being admitted and the only defense thereto being that it was justifiable, instruction 24 was of paramount importance. There was no evidence that the defendant went before any magistrate with a view of having Mullen bound over to keep the peace, although he probably had abundant opportunity of doing so during the course of the afternoon and after the difficulty at the billiard hall.   He did apply to a constable and a police officer for protection, but this was insufficient according to this instruction.   We have been unable to find any authority introducing this element into the law of self-defense.   Counsel for the State cite several cases in support of the instruction, and we have examined them all but find in them no justification of the State's contention.   Section 9 of the Crimes Act (¶ 2130 Gen. Stat. 1889) is itself a definition of justifiable homicide in this State, and it contains no such element as that required by instruction 24.   Instruction 29 further impressed upon the jury the duty of the defendant to go before a justice of the peace

for protection as a prerequisite to the plea of self-defense, thus repeating the error in giving instruction 24.

II.  Instruction 25 was also erroneous and material. The doctrine that a party unlawfully attacked must "retreat to the wall" before he can be justified in taking the life of his assailant in self-defense does not obtain in this State.  *The State v. Reed*, 53 Kan. 767. Where the defendant is in the wrong and commences the affray, even with no intent to kill or inflict great bodily harm, and the other party being thus provoked makes a deadly assault, then it is the duty of the defendant to retreat as far as the fierceness of the assault will permit him to do without danger of great personal injury to himself before slaying his antagonist.  *The State v. Rogers*, 18 Kan. 78.  In the present case it was for the jury to determine from the evidence whether Hatch or Mullen was in the wrong in commencing the affray at Second and Main streets, which resulted in the death of Mullen.  The Court should not assume that one party or the other was first or chiefly in fault when that fact is in issue, but should instruct the jury on the theory of the defendant as well as that of the State, provided each theory finds some support in the evidence as in this case.

Instruction 15 defining murder at the common law is subject to the criticism that it omits the word unlawfully ; but in connection with other instructions we think it could not have been prejudicial to the defendant, although it should be corrected on a retrial. Evidence touching the declarations of Mullen during the afternoon while armed with the shotgun should not have been admitted ; but they were scarcely prejudicial to the defendant, and the judgment would not be reversed on these grounds alone.

For the error of the Court, however, in giving in-structions 24, 25 and 29 the judgment will be reversed and the case remanded for a new trial.

All the Justices concurring.