No. 28,438.

THE STATE OF KANSAS, *Appellee*, v. JOSEPH FURTHMYER, *Appellant*.

(277 Pac. 1019.)

Opinion filed June 8, 1929.

*George W. Holland, C. R. Holland,* both of Russell, and *J. J. Schenck,* of Topeka, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *Ernest J. Malone,* county attorney, *E. A. Rea, E. C. Flood,* both of Hays, and *Jerry Driscoll,* of Russell, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant was prosecuted for murder in the first degree, charged with killing John E. O'Loughlin. He was con-

victed of murder in the second degree, sentenced on that conviction, and appeals to this court.

There was evidence which tended to prove that the defendant, on the evening of January 19, 1928, was visiting at the home of Mabel Dickerson in Hays, Ellis county, Kansas; that the defendant was engaged to be married to Mabel Dickerson; that she had two children, Elnora Dickerson, aged eleven years, and Jeanne Dickerson, aged nine years; that after the defendant, Mabel Dickerson and the two children had partaken of the evening meal at the home of Mabel Dickerson, John E. O'Loughlin, Jr., and Edna Murray, passing under the name of Grace Boyce, appeared at the home of Mabel Dickerson and asked permission to come in; that permission was granted; that they entered the home; that after entering the home, John E. O'Loughlin and Edna Murray engaged in a quarrel; that the defendant and John E. O'Loughlin left the house, went to a store in town, procured some near beer, and returned to the home of Mabel Dickerson; that John E. O'Loughlin produced some alcohol; that alcohol was put into the near beer and all of the party except the children drank of it; that John E. O'Loughlin had previously been drinking; that he became intoxicated; that the quarrel between John E. O'Loughlin and Edna Murray was renewed; that he attacked her, struck her, knocked her down, beat her head on the floor, and threatened to kill her; that Mabel Dickerson attempted to pull John E. O'Loughlin off Edna Murray and tried to persuade him from further hitting her; that the defendant then took hold of John E. O'Loughlin and pulled him away from Edna Murray; that John E. O'Loughlin then seized Mabel Dickerson and threw her on to the floor in another room and threatened to kill her; that the defendant had hold of John E. O'Loughlin and was endeavoring to stop his further assaults on Mabel Dickerson; that both Edna Murray and Mabel Dickerson were injured; that John E. O'Loughlin then attacked the defendant and threatened to kill him, Edna Murray and Mabel Dickerson; that John E. O'Loughlin had a revolver in his hand and advanced threateningly toward the defendant; that the defendant stepped into another room and procured an automatic pistol which was lying on a bureau and shot three times; and that two shots entered the body of John E. O'Loughlin, one of which entered his heart and caused his death.

■ The defendant complains of an instruction concerning self-defense given by the court; that instruction read as follows:

"If Furthmyer was a guest in the Dickerson house and that O'Loughlin

was also a guest, they were on equal footing so far as the law of self-defense was concerned where the conflict or affray was between the two. In such case the defendant should retreat from the home of another if he can do so with safety rather than kill his assailant; but if such retreat cannot be made with safety to himself at the time, or if O'Loughlin was about to or threatening to commit any felony against any person or persons in such house at such time, whether by death or great bodily harm, and if it honestly and reasonably appeared to defendant necessary to shoot O'Loughlin to protect the life of Furthmyer or of any occupant within the house at the time, or to protect Furthmyer or any person therein from great bodily harm then actually threatened or fairly, honestly and reasonably appearing to Furthmyer to be threatened against any such person and to be imminent, then he had the right to shoot and kill O'Loughlin at such time."

The following language contained in the instruction does not state the law correctly:

"In such case the defendant should retreat from the home of another if he can do so with safety rather than kill his assailant."

The defendant was not compelled to retreat from the home of Mabel Dickerson any more than he would have been compelled to retreat from the street if the attack had been made thereon. The plaintiff cites 30 C. J. 73, where the author says:

"A person who is a guest at the house of another need not retreat when attacked in the dwelling or within the curtilage by an outsider. But where both deceased and accused are guests at the same house and hence on an equal footing so far as the law of self-defense is concerned, it is the duty of accused, when assaulted by deceased, to retreat if he can do so with safety and thus avoid taking the life of his assailant."

One case, *Cole v. State*, 16 Ala. App. 55, is cited to support that statement.

We quote from the opening statement in the opinion in that case, as follows:

"The defendant killed Daniel F. Tillerson and was convicted of murder in the second degree. The evidence shows that both the deceased and defendant were guests of J. R. Tillerson, the father of the deceased and father-in-law of the defendant; that the homicide occurred in the evening between 6 and 7 o'clock in the front yard of J. R. Tillerson's residence."

In that case the entire difficulty seems to have been between the deceased and the defendant. In the action now before this court the defendant became involved in the quarrel in an attempt to get John E. O'Loughlin to cease his attacks on Edna Murray and Mabel Dickerson.

The law in this state, in *State v. Petteys*, 65 Kan. 625, 70 Pac. 588, is declared to be that—

"A person unlawfully attacked by another is not compelled to yield or retreat, no matter what the character of the attack may be. He is justified in standing his ground and repelling force by such reasonable force as may, under all the circumstances of the case, appear necessary successfully to resist the attack made." (Syl. ¶ 1.)

See, also, *State v. Reed*, 53 Kan. 767, 768, 778, 37 Pac. 174; *State v. Hatch*, 57 Kan. 420, 46 Pac. 708; and *State v. Chadwell*, 94 Kan. 302, 146 Pac. 420.

The defendant had as much right in the home of Mabel Dickerson as John E. O'Loughlin. The defendant and Mabel Dickerson were engaged to be married. He had the right to try to get John E. O'Loughlin to desist from his attack on the women and would have been derelict in his duty if he had not done so.

■ The court gave an instruction concerning a person who counsels, aids, abets or assists another in the commission of a crime, as follows:

"Any person who counsels, aids, abets and assists another person in the commission of any crime or offense is equally guilty with the person who actually commits the original acts.

"If you find and believe from the evidence beyond reasonable doubt that any person other than defendant Joseph E. Furthmyer shot and killed John E. O'Loughlin at the time and place and in the manner charged in the information or included therein, and that defendant Joseph E. Furthmyer assisted, aided and abetted in any murder or manslaughter thereby, then you should find defendant guilty of such degree of murder or of manslaughter as you find beyond reasonable doubt from the evidence of this case that such other person was guilty of under the general rules herein as to such crimes, including the rules as to self-defense also, and such as you find beyond reasonable doubt defendant to have aided and assisted such other person in committing if you further find beyond reasonable doubt that defendant was not on his part acting honestly and reasonably under the rules of self-defense already set out in these instructions."

There was no evidence whatever which tended to prove that any person other than the defendant shot John E. O'Loughlin or even assaulted him. There were only four adult people in the house at the time—the two women, the defendant and John E. O'Loughlin. The two children were in bed. The defendant testified that he shot at John E. O'Loughlin in self-defense, but did not intend to kill him. There was no evidence on which a verdict of guilty could have been based on assisting, aiding or abetting another person in killing John E. O'Loughlin. The evidence conclusively established that the defendant shot John E. O'Loughlin of his own volition. For that rea-

,son there was no place for the instruction that was given. It was error to give it.

■ Another matter complained of is that—

"The court erred in overruling appellant's application for inspection and permission to take copies of the written statements made by appellant while in custody of the sheriff, and also the written statements made by Mabel Dickerson."

The evidence disclosed that on the night on which John E. O'Loughlin was killed the defendant and Mabel Dickerson made written statements describing the circumstances surrounding the killing. Those statements were placed in the possession of the officers of the state immediately after they were made, and were in their possession and under the control of the state at the time of the trial. Before the trial the defendant made written demand to inspect and make a copy of those papers. That demand was refused. The defendant then made application to the court for an order compelling the state to permit an inspection of those papers, to make copies thereof or that copies thereof be furnished to the defendant. That application was likewise denied. Both the defendant and Mabel Dickerson testified as witnesses. The defendant cites *State v. Hinkley*, 81 Kan. 838, 106 Pac. 1088, where this court said:

"In order that a defendant in a criminal action may avail himself of the provisions of section 209 of the criminal code and sections 368 and 369 of the civil code (Gen. Stat. 1901, §§ 4816, 4817), providing for an inspection and copy or permission to take a copy of a paper or document under the control of the attorneys for the state, he must, where compliance with the demand is refused, ask for and obtain an order from the court or judge requiring the adverse party to give him, within a specified time, an inspection and copy or permission to take a copy of such paper or document. The mere serving of notice of a demand for an inspection as provided in section 368, without obtaining such order, is not sufficient.

"In this case, *held,* in common fairness the defendant should have been permitted before going to trial to inspect the transcript of the testimony taken at the coroner's inquest, it appearing that it contained evidence material to his defense, that no transcript or report of the testimony had been filed as the law requires in the office of the county clerk, and that the original transcript of such testimony was in the possession or under the control of the county attorney." (Syl. ¶¶ 2, 3.)

The application of the defendant was made under section 60-2850 of the Revised Statutes, which reads as follows:

"Either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document in

his possession or under his control containing evidence relating to the merits of the action, or defense therein. Such demand shall be in writing, specifying the book, paper or document with sufficient particularity to enable the other party to distinguish it; and if compliance with the demand within four days be refused, the court or judge, on motion and notice to the adverse party, may in their discretion order the adverse party to give to the other within a specified time an inspection and copy or permission to take a copy of such book, paper, or document; and on failure to comply with such order the court may exclude the paper or document from being given in evidence, or if wanted as evidence by the party applying may direct the jury to presume it to be such as the party by affidavit alleges it to be. This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness."

That section of the statute was under consideration in *State v. Jeffries*, 117 Kan. 742, 232 Pac. 873, where this court said:

"A provision of the civil code (R. S. 60-2850) relating to obtaining an inspection of books, papers, and documents which are to be used in evidence, has not been adopted and made applicable to trials in criminal cases by virtue of the provisions of R. S. 62-1413, and the court has not the power to enforce a demand for the inspection of letters in the custody of the county attorney which he designs to use in the prosecution of the defendant." (Syl.)

It should be noticed that the document referred to in *State v. Hinkley*, supra, was the evidence taken at a coroner's inquest, which under the law was a public document and should have been on file in the office of the county clerk and subject to public inspection. Neither the document signed by the defendant nor the one signed by Mabel Dickerson was introduced in evidence in the present action. If either of those statements had been used as evidence against the defendant it might have been reversible error to deny his application for inspection or copy. They were not introduced in evidence, but the statement signed by the defendant was referred to in both his direct and cross-examination. The penalty provided by section 60-2850 of the Revised Statutes is the exclusion of the document from evidence when the party having its control fails or refuses to allow an inspection or to furnish a copy. If the state had attempted to introduce the statements in evidence the court might have properly excluded them. They were not offered. For that reason there is nothing before this court for determination concerning their use as evidence. There was no reversible error in the state's refusing an inspection or copy of the statements, or in the court's refusing to compel the state to permit an inspection or to furnish copies of the statements.

Other questions are presented. One of them is misconduct of counsel for the state in his closing argument to the jury. The argument of counsel is a subject of criticism, and if that were the only proposition involved on this appeal it might be sufficient to cause a reversal of the judgment. Counsel for the state should be careful in his argument to the jury and should confine himself to the evidence and to proper inferences to be drawn therefrom.

Still other questions are presented which might be sufficient to cause a reversal, but each concerns matters that probably will not arise on another trial. Further attention will not be given to any of those matters complained of.

The judgment is reversed, and a new trial is directed.