No. 59,650

STATE OF KANSAS, *Appellee,* v. PAUL A. SCOBEE, *Appellant.*

(748 P.2d 862)

Opinion filed January 15, 1988.

*Steven B. Doering,* of Cole & Doering, of Garnett, argued the cause and was on the briefs for appellant.

*Herman A. Loepp,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, J.: Paul A. Scobee appeals his conviction by a jury of one count of involuntary manslaughter (K.S.A. 1986 Supp. 21-3404). The Kansas Court of Appeals, in an unpublished opinion filed June 18, 1987, reversed the conviction and remanded the case for a new trial. Although the panel of the Court of Appeals was unanimous in granting a reversal, it was divided as to the proper instructions to be given in the second trial. We granted the State's petition for review.

The facts were stated by the Court of Appeals:

"On the evening of January 11, 1986, defendant Paul Scobee shot and killed Don Lankard in the driveway of the Scobee home in Garnett, Kansas. Scobee was charged with second-degree murder and a jury convicted the defendant of involuntary manslaughter.

"This case consists of five principal players: the defendant, Scobee; the victim, Lankard; Kevin Pretzer; and twin sisters Lisa and Leah Donahue. Pretzer and Lankard spent the afternoon of January 11 driving around the city of Garnett, rendezvousing with acquaintances, drinking beer, and smoking marijuana. The two continued their celebrating into the evening hours, meeting the Donahue sisters and the defendant at the local Sonic drive-in around 9:00 p.m.

"Leah Donahue, Lankard's girlfriend, decided to ride around with Lankard

and Pretzer for the evening with the understanding that she would meet the defendant and her sister at 10:00 p.m. Scobee and Lisa Donahue drove around town for about half an hour and decided that they should start looking for Leah. When they found her, she was involved in an argument with Lankard at the North lake in Garnett. Leah jumped into Scobee's car and the three drove off.

"Scobee and the Donahue twins ended up at the girls' home, where they stayed until approximately 11:00 p.m. Leah decided that she was hungry and the three left the Donahue house to go to the Sonic. Along the way, they encountered Lankard and Pretzer, who pulled up next to the three as they were stopped at an intersection in the town square. Scobee reached underneath the seat of his car, pulled out a gun, and laid it on his lap. Leah yelled that Scobee had a gun, and Lankard got out of Pretzer's car and came towards Scobee's truck. Scobee pulled away; the Pretzer vehicle followed closely behind.

"Pretzer and Lankard followed the defendant's car to the Donahue house, where the girls were dropped off, and continued to follow the defendant around town. Defendant pulled into his parents' driveway and got out of his car; Lankard got out of Pretzer's car and ran towards the defendant. As the defendant got out of his car with his back to Lankard, he turned around, bringing his .22-calibre pistol up. At this point, the evidence is somewhat unclear. Pretzer testified that Scobee fired the gun as Lankard was approaching him. Scobee testified that he shot Lankard as Lankard ran into the gun.

"After the shooting, the defendant pointed the gun at Pretzer and told him to back off. Pretzer got back into his car and went to call an ambulance. The defendant went into his home, gave the pistol to his mother, asked her to call an ambulance and the police, and told her that he had shot Lankard.

"The defendant was charged with second-degree murder and a jury convicted him of the lesser offense of involuntary manslaughter."

In addition to the foregoing facts, Scobee testified that Pretzer, armed with a length of iron pipe, was approaching closely behind Lankard. Pretzer also testified that he was armed with an iron pipe and that he and Lankard intended to "beat Scobee's ass." Additional facts will be stated as they become relevant to the issues on appeal.

The first issue is whether the trial court committed reversible error in instructing the jury on the misdemeanor theory of involuntary manslaughter based upon the statutory language "the wanton commission of an unlawful act not amounting to a felony." Appellant's counsel timely objected at trial to the particular wording of the involuntary manslaughter instruction given by the court and also argued that instead of instructing on misdemeanor-manslaughter, the instruction should have been based on the "commission of a lawful act in an unlawful or wanton manner" prong of the involuntary manslaughter statute.

K.S.A. 1986 Supp. 21-3404 provides:

"(a) Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner.

(b) As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state, which statute or ordinance is enacted for the protection of human life or safety.

(c) Involuntary manslaughter is a class D felony."

Although Scobee was charged with second-degree murder, the court also gave instructions on the lesser crimes of voluntary manslaughter and involuntary manslaughter. The court instructed on involuntary manslaughter as follows:

"If you cannot agree that the defendant, Paul Scobee, is guilty of murder in the second degree or voluntary manslaughter, you should then consider the lesser included offense of involuntary manslaughter.

To establish this charge, each of the following claims must be proved:

1. That the defendant unintentionally killed Donald G. Lankard, Jr.;

2. That such killing was done while in the commission of the unlawful act of shooting a firearm within the city of Garnett, Kansas, under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of the conduct.

3. That this act occurred on or about the 11th day of January, 1986, in Anderson County, Kansas and in the City of Garnett, Kansas."

Appellant argues that although he did not intend to kill Lankard he did intentionally shoot in self-defense. Under such circumstances he argues that it was error to instruct on the misdemeanor theory based upon firing a gun in the City of Garnett and that instead the instruction should have been based upon "the commission of a lawful act [self-defense] in an unlawful or wanton manner."

Appellant relies heavily upon this Court's decision in *State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975). The facts in *Gregory* are quite similar to those in the present case. Gregory was charged with second-degree murder after the victim died of a pistol wound inflicted by Gregory, allegedly in self-defense. The shooting took place in the City of Coffeyville, which had a city ordinance against shooting a firearm in the city. The jury was instructed on the theory that firing a gun within the city limits

was an unlawful act not amounting to a felony. This Court found the instruction to be erroneous under the facts of the case, and stated:

"Our difficulty with the entire misdemeanor-manslaughter theory is that the gun was concededly fired with intent to injure a human being. Absent some justification such as self-defense, the act was at least aggravated battery under K.S.A. 21-3414, a class C felony. The involuntary manslaughter statute requires that the unlawful act be one 'not amounting to felony.' Even though some ordinance may have been violated we find the undisputed facts present an insuperable barrier to finding that the shooting, if by itself a criminal act, did not amount to a felony.

"We are far more comfortable with making our analysis under what we are designating (2)(b), requiring a 'lawful' act done in either an unlawful manner or wantonly. All parties, including this court, agree that there was no element of wantonness involved, so our attention is focussed on determining whether the jury could have found that Gregory was engaging in a lawful act, but did so in an unlawful manner.

"K.S.A. 21-3211 provides:

'A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force.'

"Thus if the jury found that Gregory was in fact being attacked, it would necessarily find that he was entitled to defend himself. In doing so he was engaged in a 'lawful act.'

"But the statute and our cases recognize that in repelling an attack one is limited to 'that force which *reasonably appears to be necessary* for that purpose.' [Citations omitted.] If the jury had found the deadly force employed by Gregory was 'reasonably necessary' to repel Fullard's attack, it would have acquitted him. But if it found that force was excessive what could its verdict be? If it found no malice, it could not convict of murder. If it credited Gregory's testimony that he did not intend to kill, it could not convict of voluntary manslaughter. Yet the use of excessive force eliminated the statutory justification for the homicide and made it unlawful. Still, it did not in itself constitute the misdemeanor 'unlawful act' under the involuntary manslaughter statute because by definition that would have to be an act 'prohibited' by statute or ordinance. There is, however, another solution to the jury's dilemma. We think the jury could conclude on the facts of this case that Gregory had a right of self-defense, and his exercise of that right was a lawful act. It could also find, however, that shooting Fullard was not reasonably necessary—after all, his knife was not open when found. This use of excessive force could be found to be an 'unlawful manner' of committing the lawful act of self-defense, and thus supply that requisite element of involuntary manslaughter." 218 Kan. at 185-86.

## In *Gregory* we held:

"Involuntary manslaughter under K.S.A. 21-3404 requires an unintentional

'killing.' A defendant may be convicted of involuntary manslaughter for an intentional *shooting* if it is found that the *killing* of the victim was unintentional." Syl. ¶ 3.

"Deliberately shooting a person with intent to injure, unless justified, is at least a felonious aggravated battery under K.S.A. 21-3414. As such, it cannot be an 'unlawful act not amounting to a felony' under the involuntary manslaughter statute (K.S.A. 21-3404) even if the shooting occurs in a city where the discharge of firearms violates a city ordinance." Syl. ¶ 4.

See *State v. Clark*, 218 Kan. 18, 542 P.2d 291 (1975); and *State v. Warren*, 5 Kan. App. 2d 754, 624 P.2d 476, *rev. denied* 229 Kan. 671 (1981).

It appears clear that under *Gregory* the trial court in this case should have instructed upon "the commission of a lawful act [self-defense] in an unlawful or wanton manner." This does not mean, however, that in every case where self-defense is asserted as justification for a killing the giving of a misdemeanor theory instruction is precluded. The Court of Appeals held that, under the facts of this case, the trial court was correct in giving the misdemeanor theory of involuntary manslaughter but committed error in failing to also give the self-defense portion of the instruction as approved in *Gregory*. In explaining its decision, the Court of Appeals stated:

"Evidence adduced at trial justified the trial court in giving this instruction. The defendant testified that he did not intend to kill Mr. Lankard. Further, the trial court judicially noticed that the shooting of a firearm within the city limits of Garnett was an 'unlawful act.' Lastly, there was evidence that the shooting of the pistol within the Garnett city limits was 'wanton,' that is, committed 'under circumstances that show a realization of the imminence of danger to the person of another and reckless disregard or complete indifference and unconcern for the probable consequences of the conduct.' The defendant testified that when he got out of the truck, he drew the pistol up and Lankard ran into it, whereupon the defendant pulled the trigger; defendant further stated that he intended to wave the gun and to direct them to back off. He also said that he was trying to stop Lankard. Defendant testified that he was carrying the pistol in his right hand, and that he was left-handed. This evidence justified the trial court in giving the misdemeanor-manslaughter instruction.

"However, the trial court did err in failing to instruct the jury that the defendant could be found guilty of involuntary manslaughter by performing a lawful act (self-defense) in an unlawful manner (with excessive force). See K.S.A. 1986 Supp. 21-3404(a); *State v. Williams*, 6 Kan. App. 2d 833, Syl. ¶ 4, 635 P.2d 1274 (1981). There was certainly evidence that the defendant at least believed he was acting in self-defense. Further, the defendant's use of a pistol to resist the 'attack' of the unarmed victim certainly, at the very least, raises a question as to

whether the force was excessive. See *State v. Marks*, 226 Kan. 704, 712-13, 602 P.2d 1344 (1979) (young man used pistol to repel the attack of a 65-year-old man with a cane; court held the force used by young man was excessive as a matter of law). Here, the trial court erred in not instructing the jury on the 'excessive force' theory of involuntary manslaughter."

We agree that where the evidence might support either theory of involuntary manslaughter the court should instruct on both theories. It is not inconceivable that a defendant might assert the alternative theories of self-defense and wanton commission of an unlawful act not amounting to a felony and that the evidence could support either theory depending upon the jury's belief of the evidence. See *State v. Farley*, 225 Kan. 127, 133, 587 P.2d 337 (1978). On retrial of this case the extent of the involuntary manslaughter instruction will have to be determined by the trial court based upon all the evidence. Based upon the record in the present appeal, it is difficult, under *Gregory*, to justify the misdemeanor theory instruction inasmuch as the trial judge found that Scobee "did not provoke an attack upon himself" and that there was in fact "an attack upon him." In addition, Scobee admitted he intended to shoot but that he did not intend to kill Lankard. He also contended that he fired his weapon in self-defense. We affirm the Court of Appeals decision that the involuntary manslaughter instruction given in this case was erroneous and requires reversal of the conviction.

The second issue is whether the trial court erred in failing to instruct the jury that if the defendant acted in self-defense, he had no duty to retreat. The Court of Appeals panel split on this issue, with Judge Meyer stating that, on remand, the trial court should instruct that there was no duty to retreat. The two concurring judges asserted that such an instruction would be improper, concluding that the issue is whether the defendant's actions were reasonable under the circumstances, which was adequately presented to the jury by the instruction on self-defense patterned after PIK Crim. 2d 54.17. The jury was instructed on self-defense as follows:

"INSTRUCTION NO. 7

"The defendant, Paul Scobee, claims as a defense that he acted in self-defense. Evidence in support of this claim should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant. If the defense

asserted causes you to have a reasonable doubt as to the defendant's guilt, you should find the defendant not guilty."

and

"INSTRUCTION No. 11

"The defendant, Paul Scobee, has claimed his conduct was justified as self-defense.

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself against such aggressor's imminent use of unlawful force. Such justification requires both a belief on the part of the defendant and the existence of facts that would persuade a reasonable person to that belief."

Appellant specifically requested an instruction to the effect that he was not under any duty to retreat from the attack upon him. The request was denied.

K.S.A. 21-3211 provides:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force."

There have been no recent Kansas cases addressing the issue of whether a person acting in self-defense is required to retreat. Several early cases have held there is no such duty, at least when the defendant did not provoke the attack. Although dicta, the court recognized as early as 1894 that a person is not required to retreat but "may stand his ground" and repel an unlawful attack. *State v. Reed,* 53 Kan. 767, Syl. ¶ 11, 37 Pac. 174 (1894). See *State v. Davis,* 169 Kan. 251, Syl. ¶ 1, 218 P.2d 215 (1950); *State v. Furthmyer,* 128 Kan. 317, 320, 277 Pac. 1019 (1929); *State v. Petteys,* 65 Kan. 625, Syl. ¶ 1, 70 Pac. 588 (1902); and *State v. Hatch,* 57 Kan. 420, 424, 46 Pac. 708 (1896). In *Hatch,* the Court stated:

"The doctrine that a party unlawfully attacked must 'retreat to the wall' before he can be justified in taking the life of his assailant in self-defense does not obtain in this State." 57 Kan. at 424.

In denying the appellant's request for an instruction that there was no duty to retreat, the trial court reasoned that the 1969 codification of self-defense in K.S.A. 21-3211 did not incorporate the prior Kansas case law rule that when acting in self-defense, the defendant has no duty to retreat. Later, the trial court essen-

tially held that the self-defense statute does not incorporate a rule on retreat, and the issue is simply whether the defendant's response in using force against an aggressor was reasonable under the self-defense statute. We do not agree.

In *State v. Stokes*, 215 Kan. 5, 523 P.2d 364 (1974), this court held that the self-defense statute codifies the common-law right of self-defense. Since K.S.A. 21-3211 was enacted, we have not had occasion to specifically address whether the "no duty to retreat" rule remains the law in Kansas. Based on *Stokes* and the previously cited "no retreat" cases, we think that it does. There is nothing in K.S.A. 21-3102(1), which abolishes common-law crimes, to indicate that common-law defenses or rules relating thereto were abolished when the current version of the criminal code was enacted in 1969. There is no authority supporting the State's contention that the common-law no duty to retreat rule in Kansas has been abolished by K.S.A. 21-3211.

The majority view in the United States is that one "may stand his ground and use deadly force if this reasonably seems necessary to save himself." Perkins on Criminal Law, Ch. 10 § 4, p. 1005 (2d ed. 1969). It must also be recognized that a substantial minority of jurisdictions have adopted a "retreat rule," under which "[e]ven the innocent victim of a murderous assault must elect an obviously safe retreat, if available, rather than resort to deadly force unless (1) he is in his 'castle' at the time, or his assailant is (2) one he is lawfully attempting to arrest or (3) a robber." Perkins on Criminal Law, Ch. 10 § 4, p. 1009. Other jurisdictions require retreat before employing deadly force in self-defense but not before using non-deadly force. 2 Robinson, Criminal Law Defenses § 131(c)(4), p. 81 (1984). We conclude that the no duty to retreat rule as recognized in our earlier cases remains the law in Kansas.

Having determined that the rule prevails in Kansas, is an instruction necessary or is the general instruction on self-defense found in PIK Crim. 2d 54.17 sufficient? While the PIK instruction would ordinarily be sufficient, we hold that based upon the facts of the case a trial court may be under a duty to give an instruction to the effect that the defendant did not have a duty to retreat. The prosecution here built its case around the failure of appellant to retreat. It was contended that he could have driven

to the police station, that he could have stayed in his car and honked the horn for help, or that he could have tried to escape into his home. Defense counsel, on the other hand, was precluded by the court from arguing that Scobee had no duty to retreat. Under the facts as developed in this case, we hold it was error to fail to give a "no duty to retreat" instruction. Lankard (the victim) and Pretzer were clearly the aggressors in an attack which the trial court found was not provoked by Scobee. Scobee was attacked in his own driveway and the prosecution was allowed to argue that he should have retreated. We agree with Judge Meyer that it was error in this case not to give the requested instruction.

In view of the decision reached by this Court, it is not necessary to address the other issues asserted on appeal.

The decision of the Court of Appeals is affirmed as modified herein; the conviction of the appellant is reversed and the case is remanded for a new trial.