No. 70,784

STATE OF KANSAS, *Appellee*, v. HERSCHEL L. RICKS, *Appellant*.

(894 P.2d 191)

Opinion filed April 21, 1995.

*Julie A. Gorenc*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellant

The opinion of the court was delivered by

MCFARLAND, J.: Herschel L. Ricks appeals his jury trial convictions of second-degree murder (K.S.A. 21-3402) and voluntary manslaughter (K.S.A. 21-3403).

## INSTRUCTIONS

Defendant contends the trial court erred in three respects relative to jury instructions pertaining to self-defense. These three claimed errors are:

1. Refusal to give a "no duty to retreat" instruction;
2. giving, over defense counsel's objection, an "initial aggressor" instruction; and
3. improperly limiting the jury's consideration of prior conflicts between defendant and one of the victims.

To understand the points raised in this issue, the facts must be set forth in considerable detail.

Defendant and Ronald Brown lived in the same Wichita neighborhood and were, prior to September 26, 1992, friends. Brown had been involved in a relationship with defendant's sister, Sondra. On the day in question, defendant borrowed Sondra's car. As a result of multiple traffic violations, the car was impounded. For unclear reasons, Sondra blamed Brown for the loss of her vehicle. In an intoxicated condition, Sondra went to Brown's home demanding the use of one of his vehicles. Defendant saw the pair arguing in Brown's driveway. Defendant went to the scene in an attempt to defuse the situation. A shot was fired by an unknown party. Brown went into his house, returned with a gun and threatened defendant and certain of his relatives. The group separated upon hearing police sirens nearing. After the police left, additional threats were exchanged. The falling-out between defendant and Brown continued through the fall. In December, defendant purchased a gun, which he stated was for defense against robberies.

On January 6, 1993, the fatal incident occurred. Defendant and a friend, Mark Jacobs, were riding around Wichita in defendant's car. They passed Brown in his car and proceeded to a Vickers gas station. The Brown vehicle arrived at the same station. Defendant, taking his gun with him, went into the building and purchased a can of soda. Meanwhile, Jacobs left defendant's vehicle and walked over to the Brown vehicle. The vehicle was occupied by Brown, the driver, and Willis Bumphas, the passenger. Brown told Jacobs about the September 26 incident and how he would like to beat defendant's "ass." Jacobs advised Brown that he and defendant should reconcile their differences and returned to defendant's car (front passenger seat).

As defendant came out of the gas station, Brown eased his car near defendant's vehicle. A short conversation between defendant

and Brown occurred. It is uncontroverted that defendant shot Brown three times, then turned to Bumphas, who was in the passenger seat in the Brown vehicle, and shot him three times. Both Brown and Bumphas died from their injuries.

The State's evidence was that neither victim was armed and that defendant held his gun low and out of sight as Brown approached. Defendant testified he thought Brown and Bumphas were armed with guns and represented a threat to him. Defendant was charged with two counts of first-degree murder. He was convicted of second-degree murder in the death of Bumphas and voluntary manslaughter in the Brown killing.

With this background in mind, we turn to the particular claims of error. Defendant relies heavily upon *State v. Scobee*, 242 Kan. 421, 748 P.2d 862 (1988), in support of his claim that the trial court erred in refusing to instruct the jury that defendant was under no duty to retreat from the confrontational situation. This reliance is misplaced. Almost no Kansas cases decided in the last 50 years discuss the no duty to retreat concept. In *Scobee*, we held that under the facts of that case a no duty to retreat instruction was required. In *Scobee*, two aggressors followed defendant to his home. While he was parked on his driveway, the aggressors approached defendant in a menacing manner with one of them brandishing an iron pipe. Defendant killed one of the aggressors with a rifle. The prosecution had built its case upon the theory that the defendant had a duty to retreat, such as by driving to a police station. Defense counsel was precluded from arguing defendant had no duty to retreat from his driveway.

The facts herein are clearly distinguishable from those in *Scobee*. The no duty to retreat instruction is required, as indicated in *Scobee*, in infrequent factual situations such as found therein with such elements as a nonagressor defendant being followed to and menaced on home ground. That is not the situation herein. By his own admission, defendant was in a public parking lot and took his gun with him before anything occurred between the occupants of the two vehicles. Also, unlike *Scobee*, it was not an uncontroverted fact that the defendant was the victim of aggressive acts immediately prior to firing his weapon. We find no

error in the trial court's refusal to give the jury a no duty to retreat instruction.

Defendant next claims the trial court erred in giving the following instruction:

"No. 16

"A person who initially provokes the use of force against himself is not justified in the use of force to defend himself unless:

1. He has reasonable ground to believe that he is in present danger of death or great bodily harm, and he has used every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the other person;
   or
2. He has in good faith withdrawn and indicates clearly to the other person that he desires to withdraw and stop the use of force, but the other person continues or resumes the use of force."

In this case, it was disputed whether Brown or defendant was the initial aggressor. Also, we have the initial aggressor question as between defendant and Bumphas.

An individual who has willingly provoked mutual combat is not justified or excused in taking another's life unless he or she has withdrawn in good faith, has communicated that withdrawal to the opponent, and has done all in his or her power to avert the necessity of killing. *State v. Jordan*, 250 Kan. 180, Syl. ¶ 6, 825 P.2d 157 (1992); *State v. Meyers*, 245 Kan. 471, Syl. ¶ 1, 781 P.2d 700 (1989).

Defendant concedes instruction No. 16 is a correct statement of the law, but he contends it was inapplicable to the facts herein and compounded the previously claimed error of refusing to give a no duty to retreat instruction. The jury was not instructed that defendant was the initial aggressor. If there was an initial aggressor it was for the jury to determine who it was. If the jury found defendant was not the aggressor, it could disregard the instruction. See *State v. Hunt*, 257 Kan. 388, 894 P.2d 178 (1995).

We find no error in the giving of this instruction under the facts herein.

For his final complaint as to instructions, defendant contends the trial court's limiting instruction concerning prior conflicts between defendant and Brown was erroneous.

At trial, defendant was asked, on direct examination, why he believed Brown was going to shoot him when Brown approached him at the gas station on January 6, 1993. Defendant answered, "Prior to that date Ronald [Brown] had pulled a gun on me before." As defendant began to explain the September 26, 1992, incident, the State objected on the grounds of foundation, relevancy, and prejudicial effect. The State further asserted that if the court permitted an answer to the question "involving any alleged misconduct of a criminal or civil nature by Ronald Brown," that a limiting instruction be given which would permit the jury to consider testimony as to why defendant thought Ronald Brown might shoot him only for the purpose of determining defendant's subjective state of mind. The court agreed with the State's reasoning for a limiting instruction. Defense counsel objected to the limiting instruction, contending that the testimony likewise applied to the objective reasonableness of defendant's behavior. The court orally gave the following limiting instruction to the jury:

"You may consider the testimony as to why the defendant thought Ronald Brown might shoot him only for the purposes of determining the defendant's subjective state of mind."

Over defendant's objection, an identical instruction was given to the jury prior to its deliberations.

An appropriate self-defense instruction was given herein. As we stated in *State v. Jordan*, 250 Kan. at 185:

" 'Our test for self-defense is a two-pronged one. We first use a subjective standard to determine whether the defendant sincerely and honestly believed it necessary to kill in order to defend. We then use an objective standard to determine whether defendant's belief was reasonable—specifically, whether a reasonable person in defendant's circumstances would have perceived self-defense as necessary.' " (Quoting *State v. Stewart*, 243 Kan. 639, 649, 763 P.2d 572 [1988]).

The trial court obviously was concerned about the testimony relative to the September incident. The homicides herein did not occur until the following January. Also, the September incident did not involve Bumphas. The trial court was trying to keep the September incident in its proper place by giving the limiting instruction. The September incident was relevant only as to the

Brown self-defense claim. A limiting instruction which restricted consideration of the evidence only as to the Brown self-defense issue, without reference to either the subjective or objective prong, would have been preferable. We do not find reversible error in the giving of the limiting instruction. The September 26 incident was an established fact—not a mental aberration by defendant. As will be recalled, defendant testified Brown was armed with a gun and posing an immediate threat to him in the gas station, although this was contrary to the other evidence in the case. The jury heard the evidence and found the shooting of Brown was voluntary manslaughter, which is an unlawful killing without malice that is done intentionally upon a sudden quarrel or in the heat of passion (K.S.A. 21-3403).

We are satisfied the limiting instruction given had little, if any, likelihood of changing the results of the trial, and any error therein is harmless. See *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 5, 864 P.2d 693 (1993).

## RIGHT TO A FAIR TRIAL

Defendant complains of several trial court rulings which he contends deprived him of his constitutional right to a fair trial. Defendant points to a number of instances where inquiry was restricted as to defendant's relationship and encounters with Brown between September 26 and the January killing of Brown.

Review of the admission or the exclusion of evidence is governed by the harmless error rule. K.S.A. 60-261 provides that no error in either the admission or the exclusion of evidence by the court is a ground for granting a new trial or for setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. *State v. Morris*, 255 Kan. 964, Syl. ¶ 6, 880 P.2d 1244 (1994); *State v. Getz*, 250 Kan. 560, 569, 830 P.2d 5 (1992).

It could be argued that some of the complained-of rulings involve a rather rigid application of procedural rules. We are satisfied that no substantial rights of the defendant were affected.

Looking at the totality of the record, we are satisfied that defendant was able to present adequately the evidence to the jury that he wanted relative to the ongoing hostility exhibited by Brown to defendant subsequent to the September 26 incident, despite some restrictive rulings as to particular questions and other evidence.

## CONSIDERATION OF K.S.A. 21-4601

Next, defendant contends that the district court abused its discretion by sentencing him to more than the minimum terms of imprisonment without considering K.S.A. 21-4601, specifically defendant's "age, his lack of a prior felony record, his reputation for peacefulness and honesty, and his supportive and law-abiding family." Defendant relies on *State v. Richard*, 252 Kan. 872, 850 P.2d 844 (1993), for support.

K.S.A. 21-4601 provides:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

The sentencing judge alone determines the appropriate sentence or other disposition in each case, not the appellate judges. *State v. Heywood*, 245 Kan. 615, 617, 783 P.2d 890 (1989). The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, the public safety, and the statutory guidelines for sentencing. *State v. Dotson*, 256 Kan. 406, 886 P.2d 356 (1994); *State v. Richard*, 252 Kan. 872, Syl. ¶ 1, 850 P.2d 844 (1993); *State v. McDonald*, 250 Kan. 73, 82, 824 P.2d 941 (1992).

Where a sentence is within the statutory limits prescribed for the offense, it will not be disturbed on appeal unless it is shown that the district court abused its discretion or that the sentence

was the result of partiality, prejudice, oppression, or corrupt motive. *State v. Fisher*, 249 Kan. 649, Syl. ¶ 1, 822 P.2d 602 (1991); *State v. Heywood*, 245 Kan. at 617-18; *State v. Doile*, 244 Kan. 493, 503-04, 769 P.2d 666 (1989). K.S.A. 21-4601 sets forth the Kansas policy in sentencing a defendant. The trial court must observe this policy during sentencing. Failure to mention K.S.A. 21-4601 and the policy contained therein on the record is not error as long as, from the entire record, it becomes clear that the trial court considered the provisions of K.S.A. 21-4601. *State v. Johnson*, 255 Kan. 156, Syl. ¶ 5, 872 P.2d 247 (1994).

It is clear from reading the record that, while not specifically addressing K.S.A. 21-4601, the sentencing court considered its requirements. The presentence investigation report, which the sentencing court incorporated into its remarks at sentencing, included most areas (age, prior criminal record, reputation) defendant pointed to in his allegation of judicial abuse. The court thoroughly discussed the sentencing factors of K.S.A. 21-4606. Additionally, the court received numerous letters on defendant's behalf and offered the parties an opportunity to review them before proceeding with the sentencing hearing.

We find no abuse of discretion on this issue.

## SENTENCE CONVERSION

Defendant filed a motion seeking sentence conversion under K.S.A. 1994 Supp. 21-4724. The crimes with which defendant was convicted render him ineligible for sentence conversion under the statute's limited retroactivity provision. Defendant asks that we declare this limited retroactivity provision constitutionally impermissible.

In *Chiles v. State*, 254 Kan. 888, 869 P.2d 707, *cert. denied* 115 S.Ct. 149 (1994), like challenges were made to the constitutionality of the statute and the statute was upheld. Defendant contends *Chiles* was wrongly decided. If we adhere to *Chiles,* that case controls the outcome of this appeal. In *State v. Randall,* 257 Kan. 482, 894 P.2d 196 (1995), we considered and rejected a

similar challenge to *Chiles*. We adhere to *Chiles* which is controlling on this issue.

The judgment is affirmed.