(262 P.3d 1055)

No. 104,865

STATE OF KANSAS, *Appellee*, v. JASON LEE MARTIN BROWN, *Appellant*.

Opinion filed August 19, 2011.

*John A. Fakhoury*, of Fakhoury Law Office., of Topeka, for appellant.

*Jodi Litfin*, assistant district attorney, *Chad Taylor*, district attorney, and *Steve Six*, attorney general, for appellee.

Before GREEN, P.J., MARQUARDT and ATCHESON, JJ.

MARQUARDT, J.: Jason Lee Martin Brown (Brown) appeals his conviction of domestic battery, arguing that there was insufficient evidence to support the conviction. We affirm.

On March 30, 2010, Brown and Amanda Packer, his girlfriend, were having a heated verbal argument in their residence. During the course of the exchange, Brown was trying to leave but Packer was standing in front of the door. Eventually, Brown pushed Packer out of the way and Packer fell down onto a couch. She was not injured. The police arrived immediately thereafter. Following a bench trial, Brown was convicted of domestic battery and sentenced to probation. Brown timely appeals.

Brown contends that the facts do not support a conviction for domestic battery. "When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution to determine whether the court is convinced that a rational fact finder could have found the defendant guilty beyond a reasonable doubt." *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

To the degree that this case implicates the interpretation of a statute, it presents a question of law over which this court has unlimited review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). Thus, in such situations, an appellate court is in as good a position as the trial court to examine and consider the evidence and to determine what the facts establish as matter of law. *Crawford v. Hrabe*, 273 Kan. 565, 570, 44 P.3d 442 (2002).

Domestic battery is defined as "intentionally causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner." K.S.A. 21-3412a(a)(2).

Brown does not dispute that he made intentional physical contact with another household member. However, Brown argues that his actions do not meet the statutory requirement of done in a "rude, insulting or angry manner," because "Kansas law provides him a justification for his use of force in this situation."

During the hearing, the court concluded that both Brown and Packer were household members, as contemplated by the statute. The court then found that Brown did intentionally cause physical contact with Packer. Finally, when considering the context and circumstances of the physical contact, the court decided that "in-

tentionally shoving someone in the course of an argument is rude, insulting, or angry contact."

There was evidence that Brown and Packer were in an extremely heated and angry verbal exchange at the time of the contact. Furthermore, Brown pushed Packer hard enough that she fell down onto a couch. Evidence that Packer was in Brown's way is irrelevant in determining whether the contact was done in a rude, insulting, or angry manner.

Based on the evidence that the contact was made during an intense argument, a rational fact finder could have found beyond a reasonable doubt that the contact was done in a "rude, insulting, or angry" manner and that a domestic battery occurred.

Brown's main argument is that he was entitled to use force against Packer in order to exit the house and escape the argument. Under K.S.A. 21-3211(a), a person is justified in the use of force against another when and to the extent it reasonably appears to such person that the use of force is necessary to defend against the other's imminent use of unlawful force.

Brown claims that when Packer blocked his exit from the house she was using unlawful force, amounting to the crime of criminal restraint. Brown claims that he was provoked to initiate contact at that point because his only alternative "was to remain trapped in the home with Packer, who wanted to continue with the angry exchange."

Brown argues that he was subjected to "unlawful force" under K.S.A. 21-3211 by being restrained in his home. Therefore, he was justified in "defending himself" against that "force" by using force to escape.

Brown makes a creative argument, but there is no Kansas case law suggesting that the excuse of self-defense applies in this context. Finding that a defendant was justified in using physical force to escape an angry verbal argument is simply not supported by established law.

Furthermore, a reasonable statutory interpretation of K.S.A. 21-3211(a) rejects Brown's argument. When interpreting the meaning of a statute, the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be as-

certained. *Arnett*, 290 Kan. at 47. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009).

Evidence that the self-defense statute was only intended to allow self-defense against physical force can be found by analyzing Kansas cases on self-defense. Kansas courts consistently hold that the self-defense statute is a codification of the common-law right of self-defense. It allows a person to "stand his ground," and it limits the degree of force which may be used "to repel an attack" to that force which reasonably appears to be necessary for that purpose. *State v. Deavers*, 252 Kan. 149, 154, 843 P.2d 695 (1992), *rev. denied* 508 U.S. 978 (1993); *State v. Stokes*, 215 Kan. 5, 9, 523 P.2d 364 (1974); *State v. Reed*, 53 Kan. 767, Syl. ¶ 11, 37 P. 174 (1894). Consistent references to "repelling an attack" create an inference that the defense must be in response to physical force.

In this case, there was no imminent physical force or attack that Brown was forced to defend himself against. If he had not used force, he only would have had to remain in the house and endure a heated verbal argument. An interpretation that allows an individual to commit a battery to avoid being stuck in an argument is counterintuitive to the plain meaning of the statute.

Brown's final argument is that under *State v. Scobee*, 242 Kan. 421, 748 P.2d 862 (1988), he had no duty to retreat when being menaced on his own property. In *Scobee*, two aggressors pursued Scobee to his home. Scobee parked in his driveway and got out of his car. One of the aggressors ran toward Scobee with a clear intent to physically attack him. The other aggressor brandished an iron pipe. Scobee shot and killed the first attacker as he approached. The Kansas Supreme Court held that a defendant who is attacked in his or her own driveway has no duty to retreat. 242 Kan. at 429.

In this case, unlike *Scobee*, both Brown and Packer were in their own home. Furthermore, Brown was not subject to an imminent physical attack that caused him to choose between retreat and the use of force. This case bears no resemblance to the facts in *Scobee*, and Brown's reliance on it is misplaced.

Brown argues that K.S.A. 21-3211 "permits use of force when there is no requirement to retreat." However, this is an incomplete reading of the statute. The statute reads: "Nothing in this section shall require a person to retreat if such person is using force to protect such person." K.S.A. 21-3211(c). The statute doesn't *automatically* permit the use of force when there is no duty to retreat, as Brown suggests. It simply says that there is no duty to retreat during a self-defense situation. The other requirements for a self-defense situation must still be met. Even though a person has no duty to retreat in his or her home, only a reasonable use of force is permitted. As discussed above, Brown's situation did not implicate the excuse of self-defense.

The district court relied on sufficient evidence when it found Brown guilty of domestic battery. Furthermore, a reasonable interpretation of the Kansas self-defense statute and case law show that the statute does not give Brown justification for his actions.

Affirmed.

\* \* \*

ATCHESON, J., dissenting: I respectfully dissent. Based on the undisputed evidence admitted during the bench trial, Defendant Jason Lee Martin Brown did not violate the criminal domestic battery statute, K.S.A. 21-3412a(a).

As of August 2010, when this case was tried, Brown and Amanda Packer lived together in Topeka. They are not married but are parents to a child who lived with them. On March 30, 2010, Brown and Packer were in the midst of a loud argument. According to the trial testimony, they were exchanging only words—neither had laid hands on the other. Both agreed, however, their verbal jousting had become noisy and profane. Brown said he wanted to leave the residence and, thus, discontinue the argument. He testified that he "kept telling her I wanted to leave[;] I wanted this to end." Brown said he asked Packer "to move out of [the] way." Brown said that Packer placed herself between him and the exit. Packer testified Brown was going to leave the residence so she stood in the doorway to block his way. At trial, Packer agreed she was "pretty much" getting in Brown's way.

As I understand the trial testimony, the couple lived in what they described as a trailer. Packer stood in a doorway between the living room where Brown was and the kitchen where the exterior door to the trailer was. To get out, Brown had to go through the doorway where Packer stood. Brown, then, pushed Packer's shoulder or upper chest (there is some discrepancy, though that seems legally insignificant) to get by her and out the trailer door. Packer fell on a sofa.

Police officers arrived shortly afterward. Neither Brown nor Packer called the authorities. I infer a neighbor hearing the ruckus probably did. Packer asserted she was uninjured, and the officers saw nothing to indicate otherwise.

The trial was, in a word, brief. All of the witness testimony is contained in about 14 pages of the record.

Under K.S.A. 21-3412a(a) domestic battery is: "(1) Intentionally or recklessly causing bodily harm by a family or household member against a family or household member; or (2) intentionally causing physical contact with a family or household member by a family or household member when done in a rude, insulting, or angry manner." The statute essentially makes simple battery, as defined in K.S.A. 21-3412, a separate and somewhat more serious offense when committed between persons sharing a house or a family connection. Brown was charged under the second subsection of the statute. There is no question about the two being household members. And there is no question Brown intentionally caused physical contact with Packer. The only issue is whether that contact was done "in a rude, insulting or angry manner."

As the majority points out, the evidence must be viewed in a light most favorable to the State and, thus, in support of the trial court's judgment of conviction. But I see no material dispute about the events. In its bench ruling, the trial court noted no material conflicts in the evidence and made no credibility findings. The trial court determined Brown shoved or pushed Packer during an argument to "effect an exit from a room." The trial court then concluded: "I suppose that shoving someone in the midst of an argument can be considered rude, insulting, or angry. And I suppose

that's the answer to the question. So based on that, the Court would enter a finding of guilty."

The record indicates the trial court found the issue to be at least mildly perplexing because while the argument itself plainly was rude, insulting, and angry, the physical contact really was not. The undisputed evidence showed that Brown told Packer he wished to leave and asked her to move out of the way. Rather than do so, Packer, knowing of Brown's intention to leave, thwarted him by blocking the doorway. He then pushed her aside so he could leave.

Basically, the trial court concluded that *any* physical contact during a rude, insulting, or angry oral exchange must likewise necessarily be rude, insulting, or angry and, therefore, a criminal battery. But that cannot be correct.

If, during the argument, Brown saw a pack of feral dogs set upon a letter carrier delivering mail just up the street and pushed Packer aside to go to that person's assistance, I don't see that he would be guilty of battery. The physical contact would not have been done in a rude, insulting, or angry way. Similarly, had Packer backed into the kitchen and brushed against a hot burner on the stove igniting her shirt, Brown would not be criminally liable for grabbing her in an effort to extinguish the flames.

But other physical contact during an argument plainly would violate the statute. Had Brown been jabbing his finger into Packer's shoulder to emphasize his side in the dispute, he would be guilty of domestic battery. Had Packer refused a demand that she shut up and Brown then slapped her, he would be guilty.

The essence of the offense is the nature of the physical contact itself; it must be rude, insulting, or angry. The surrounding circumstances establish a context that guides that determination. But simply because some of the circumstances may be that way, the contact does not automatically violate the statute. The district court and the majority both fail to acknowledge that distinction.

While the two sets of examples I have given are quite different from each other, they demonstrate that the offense of battery (or, here, domestic battery) contemplates a line between conduct that is proscribed and that which is not. Almost anytime the law draws a line, it may become difficult to distinguish between two sets of

circumstances falling close to—but on opposite sides of—that line. They probably look a lot alike.

The majority dismisses the undisputed evidence that Packer blocked Brown's way. But that evidence combined with the undisputed evidence Brown asked Packer to step aside so he could leave and her acknowledgement that she understood him goes to the core of the case and whether the law had been broken. In those circumstances, the physical contact was sufficiently distinct from the rude, insulting, and angry discourse swirling around it to fall on the noncriminal side of the line drawn in K.S.A. 21-3412a(a)(2).

Had Brown said nothing to announce his desire to leave and simply pushed Packer aside in the course of the argument and left the residence, *those* circumstances would have been much closer to the line. I am not sure on which side they would belong. But that case is not this one.

I do agree that self-defense has nothing to do with this case and would not justify Brown's conduct as a means of protecting himself.

And Brown had no license to use some greater degree of force. Had Packer suffered "bodily harm," Brown could have been prosecuted under the other means of committing domestic battery outlined in K.S.A. 21-3412a(a). That subsection criminalizes "intentionally or recklessly causing bodily harm" whether or not the perpetrator acts in a rude, insulting, or angry way. K.S.A. 21-3412a(a)(1). The offender need only engage in deliberate conduct resulting in such harm to violate that section, even if he or she never meant to hurt the victim. K.S.A. 21-3201(b). If the resulting harm were even graver or the force used likely to cause serious injury, the perpetrator could be prosecuted for felony battery. K.S.A. 21-3414(a)(1) (aggravated battery).

I would reverse the conviction and enter a judgment of acquittal.